IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INNOSPAN CORP.,

    Plaintiff,

    v.

INTUIT, INC., MINT SOFTWARE, INC., SHASTA VENTURES GP, LLC, and DOES 1–20,

    Defendants.

No. C 10-04422 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

## INTRODUCTION

In this trademark infringement action, defendants move to dismiss all claims made by plaintiff. For the reasons stated below, the motions to dismiss are **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff Innospan Corporation and its related companies have been using the mark "mint" continuously since July 2005. These companies have done business in the fields of high speed Internet solution, IT consulting service, movable printer sales and service, and social networking (Compl. ¶ 1). In the early months of 2006, defendant Shasta Ventures GP, LLC, considered investing in Innospan, and Innospan sent Shasta several business plans displaying the Innospan mint mark. Shasta declined to invest in Innospan in or about May 2006, and about a year later, Shasta invested in defendant Mint Software, Inc. (Compl. ¶ 21). Innospan alleges

that Shasta stole the "mint" name and mark and gave them to defendant Mint Software, making Mint Software a more valuable acquisition target for defendant Intuit, Inc. Intuit purchased Mint in 2009 for $171 million (Compl. ¶ 27).

Defendants Intuit and Mint Software are in the business of providing free online personal financial services, and they have used several different mint marks in connection with this business between 2006 and 2010. Due to Mint and Intuit's use of these marks, Innospan alleges that it suffered losses stemming from actual confusion by its potential customers and business partners (Compl. ¶ 51).

On September 22, 2010, plaintiff filed its first amended complaint against defendants in the Santa Clara County Superior Court, reciting seven causes of action: (1) conversion (against Intuit, Mint Software, and Shasta Ventures); (2) infringement of unregistered mark (against Intuit and Mint Software); (3) common law misappropriation and unfair competition (against Intuit and Mint Software); (4) state and common law misappropriation and unfair competition (against Shasta); (5) state statutory unfair competition (against, Intuit, Mint Software, and Shasta); (6) declaratory relief (against Intuit and Mint); and (7) unjust enrichment (against Mint Software and Shasta). Shasta, Intuit, and Mint Software removed the action to federal court and brought the instant motions to dismiss.

On October 27 Innospan also filed an *ex parte* application for a temporary restraining order. Defendants filed an opposition to that motion that is addressed in a companion order. A hearing for all of these motions was held on December 2, 2010.

## ANALYSIS

### 1. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a pleading must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion

1  couched as a factual allegation." *Id*. at 1949-50.  "[C]onclusory allegations of law and

2  unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a

3  claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).  Dismissal without

4  leave to amend is only appropriate when the Court is satisfied that the deficiencies in the

5  complaint could not possibly be cured by amendment.  *Jackson v. Carey*, 353 F.3d 750, 758

6  (9th Cir. 2003) (citation omitted).  With these legal standards set forth, this order turns to the

7  seven claims in the complaint.

8      **2.**    **CONVERSION**

9      The elements of a conversion claim under California law are as follows:

10  > A conversion occurs where the defendant wrongfully exercises dominion over the property of another. *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 35 Cal.Rptr. 3d 684, 691 (Ct. App. 2005) (citing *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 61 Cal.Rptr.2d 707, 709 (Ct. App. 1997)).  To establish conversion, a plaintiff must show (1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages. *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 245 Cal. Rptr. 548, 550 (Cal. Ct. App. 1988) (citing *Baldwin*, 145 Cal.Rptr. at 416).  A plaintiff in a conversion action must also prove that it did not consent to the defendant's exercise of dominion.

17  *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).

18      Plaintiff alleges that defendants converted the mint name and mark without permission,

19  sufficiently pleading all three elements under California law.  Defendants argue, however, that

20  under California law the tort of conversion does not extend to trademarks.  In *Kremen v. Cohen*,

21  the Ninth Circuit decided that intangible property could be converted.  337 F.3d 1024, 1030 (9th

22  Cir. 2003).  That decision, however, has yet to be applied to intangible intellectual property

23  rights in a trademark within the Ninth Circuit.  In *Meeker v. Meeker*, Judge White analyzed the

24  decision in *Kremen* and decided not to extend the tort of conversion "to reach the intangible

25  intellectual property rights in a trademark."  No. 02-00741, WL 2554452, at *6 (N.D.Cal. Nov.

26  10, 2004).  The same conclusion was reached by Judge Wilken in *Tethys Bioscience, Inc. v.*

27  *Mintz, et al.*, "although *Kremen* recognized that intangible property could be converted,

28  subsequent California cases addressing the application of the conversion tort to intangible

1  property have suggested that this theory should not be expanded to 'displace other, more

2  suitable law'." No. 09-5115, WL 2287474, at *7 (N.D.Cal. June 4, 2010). This order concurs.

3  Plaintiff's complaint also alleges a claim for trade infringement under the Lanham Act. That

4  claim is the appropriate legal avenue for trademark infringement, not conversion. Defendants'

5  motions to dismiss this claim are **GRANTED**.

6      **3.    TRADE INFRINGEMENT**

7      "To prevail on its claim of trademark infringement, [Plaintiff] must prove: (1) that it has

8  a protectible [sic] ownership interest in the mark; and (2) that the defendants' use of the mark is

9  likely to cause consumer confusion, thereby infringing upon the State's rights to the mark."

10 *Dep't of Parks & Recreation for State of Cal. v. Bazaar del Mundo Inc.*, 448 F.3d 1118, 1124

11 (9th Cir.2006) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir.1985)

12 (en banc)). Plaintiff argues that it has sufficiently pled the elements required under the Lanham

13 Act for trademark infringement. This order agrees.

14     As to the first element, "to acquire ownership of a trademark it is not enough to have

15 invented the mark first or even to have registered it first; the party claiming ownership must

16 have been the first to actually use the mark in the sale of goods or services." *Sengoku Works*

17 *Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219, *as modified*, 97 F.3d 1460 (9th Cir. 1996). Here,

18 plaintiff alleges both the invention of the mint mark as well as its original use in the sale of

19 goods or services in 2005. Defendants do not refute these facts.

20     In regard to the second element, likelihood of confusion, the Ninth Circuit set forth an

21 eight-factor test in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979): "1.

22 strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual

23 confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be

24 exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of

25 expansion of the product lines." The Ninth Circuit has also noted, however, that whether there

26 is a likelihood of confusion between two competing marks is a question of fact. *Quiksilver, Inc.*

27 *v. Kymsta Corp.*, 466 F.3d 749, 759 (9th Cir. 2006).

28

4

In the instant action, the plaintiff has sufficiently pled that a likelihood of confusion is plausible between the original mint mark and the marks used by defendants Intuit and Mint Software. Plaintiff is engaged in a variety of technology-based businesses on the internet, similar, if not related to the technology business run by defendants, and alleges confusion among its customers between the two marks. Moreover, the complaint also describes the strength of the mark, similarity of the marks, and several other factors that would be considered under the *Sleekcraft* test. The plaintiff, however, does not have to establish at this stage that confusion exists, merely that confusion is plausible based on the allegations in the complaint. Indeed, whether there is a likelihood of confusion between two competing marks is a question of fact that is to be addressed at trial or in a motion for summary judgment. Defendants' motions to dismiss the claim of trade infringement are **DENIED**.

### 4. UNFAIR COMPETITION AND MISAPPROPRIATION

Plaintiff's next claim is for unfair competition and misappropriation. Common law misappropriation is simply a subset of unfair competition. *Bank of the W. v. Sup. Ct.*, 2 Cal.4th 1254, 1263 (1992). Defendants argue that controlling Ninth Circuit authority dictates that the tort of misappropriation does not extend to cover trademarks. In *Toho Co. v. Sears, Roebuck & Co.*, the Ninth Circuit addressed this issue and decided that California courts would refuse to extend the misappropriation tort to cases where the plaintiff solely alleged trademark infringement. 645 F.2d 788, 794 (9th Cir. 1981). Our own Judge Chen, however, has subsequently revisited that question in light of decisions by California courts and found that misappropriation *has* been extended to cover trademarks. In *Garcia v. Coleman*, Judge Chen decided that, "although the Ninth Circuit's decision in Toho supports defendants' position, the California courts have held there is in fact a claim for misappropriation for a trade name so long as there is some likelihood of confusion." No. 07-2279, WL 4166854 at *15 (N.D. Cal. Sept. 8, 2008). Thus, California common law does afford protection even if the protected interests are akin to those protected by trademark law. *Id*. at *16.

5

In the instant action, as discussed above, plaintiff has sufficiently pled a likelihood of confusion. Therefore, similar to plaintiff's claim for trade infringement, plaintiff's claims for unfair competition and misappropriation hinge on questions of fact, not law. Defendants argue, however, that plaintiff's claims are time-barred because the statute of limitations has expired. California Code of Civil Procedure Section 339 sets forth a two-year statute of limitations. Plaintiff's complaint alleged that defendants misappropriated the mint mark in 2007, and so defendants argue that the two-year statute of limitations expired in 2009. Plaintiff's complaint also alleged, however, that defendants concealed facts from plaintiff, including the alleged disclosure of the mint mark by Shasta to Mint Software, preventing the discovery of the misappropriation. Such behavior tolls the applicable statute until the plaintiff discovers or ought to have discovered those facts. *Hernandez v. Garcetti*, 68 Cal. App. 4th 675, 680–81 (1998). Plaintiff asserts that because of the concealment by defendants, the misappropriation was not discovered until 2010. This issue must be tried. Defendants' motions to dismiss these claims are **DENIED.**

Plaintiff requests to withdraw its common law unfair competition claim against defendant Shasta because this claim requires a likelihood of confusion and Shasta is not using the mint mark. Similarly, defendant Shasta argues that misappropriation, as a subset of unfair competition, requires a likelihood of confusion as well and none exists. Therefore, both plaintiff's request to withdraw its unfair competition claim against Shasta and defendant Shasta's motion to dismiss the claim of misappropriation are **GRANTED**.

### 5. CLAIMS FOR VIOLATION OF CALIFORNIA LAW

As acknowledged by both parties, the success of Innospan's state law claims under California Business and Professional Code 17200 is based on the same conduct and arguments for plaintiff's federal claims. To the extent this order finds that Innospan properly states federal claims for unfair competition and misappropriation, Innospan's state law claims for unfair business practices are also not dismissed. Defendants' motions to dismiss Innospan's state law claims are **DENIED**.

6

### 6. DECLARATORY RELIEF

Plaintiff's sixth claim seeks declaratory relief. Until this case is finally determined, it is impossible to say that declaratory relief will not be in order. Defendants' motions to dismiss plaintiff's claim for declaratory relief are **DENIED**.

### 7. UNJUST ENRICHMENT

Defendants make the argument that there is no cause of action for unjust enrichment in California. This is true. Indeed, unjust enrichment is "not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). As such, a claim for unjust enrichment is properly pled as a claim for a contract implied-in-law. It "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). California, however, recognizes an exception to the rule that unjust enrichment does not lie when an enforceable contract exists: "Restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride*, 123 Cal. App. 4th at 388.

Given this backdrop, to properly state a claim, Innospan would have had to either allege that the parties' rights were not squarely set out in a binding agreement, or allege that any express contract was procured by fraud or was ineffective for some reason. Since Innospan failed to properly state a claim for unjust enrichment under these standards, defendants' motions to dismiss Innospan's seventh claim must be **GRANTED**.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are hereby **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motions are **GRANTED** as to plaintiff's claims for conversion against all defendants, for unfair competition and misappropriation against Shasta, and for unjust enrichment against Shasta and Mint Software. The motions are **DENIED** for all other claims. Innospan may file a motion seeking leave to amend their counterclaims — attaching the

1  amended pleading thereto — **BY NOON ON THURSDAY, DECEMBER 16, 2010**, explaining why
2  the amended claims properly state claims for relief

3      Finally, the Court is unwilling to convert the motions to dismiss to motions for summary
4  judgment as defendants suggested in their reply brief.  If defendants feel so strongly that
5  plaintiff's case is hopeless they should file a proper motion for summary judgment at the
6  appropriate time.  Plaintiff will have to oppose it and provide a Rule 56 affidavit, and the Court
7  will consider, at that time, whether to allow discovery on the Rule 56 motion.

    **IT IS SO ORDERED.**

Dated: December 3, 2010.

    WILLIAM ALSUP
    UNITED STATES DISTRICT JUDGE