IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOSPAN CORP., <br><br> Plaintiff, <br><br> v. <br><br> INTUIT, INC., MINT SOFTWARE, INC., SHASTA VENTURES GP, LLC, and DOES 1–20, <br><br> Defendants. | No. C 10-04422 WHA <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR LEAVE TO FILE SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE** |

### INTRODUCTION

In this trademark infringement action, plaintiff Innospan Corp. moves for a preliminary injunction. For the reasons stated below, the motion is **DENIED**.

### STATEMENT

On September 20, 2010, Innospan filed its complaint in the Santa Clara County Superior Court, reciting seven causes of action: (1) conversion and misappropriation (against Intuit, Inc.; Mint Software, Inc.; and Shasta Ventures GP, LLC); (2) infringement of unregistered mark (against Intuit and Mint); (3) common law misappropriation and unfair competition (against Intuit and Mint); (4) state and common law misappropriation and unfair competition (against Shasta); (5) state statutory unfair competition (against Intuit, Mint, and Shasta); (6) declaratory relief (against Intuit and Mint); and (7) unjust enrichment (against Mint and Shasta). Intuit and Mint removed the action to federal court on September 30, 2010.

1    On October 27, 2010, Innospan filed an *ex parte* application for a temporary restraining
2 order. The next day, an order issued determining that defendants should have a full and fair
3 opportunity to respond to this request, which would be treated as a motion for preliminary
4 injunction. Defendants opposed this motion and also have filed motions to dismiss that are
5 addressed in a companion order. This order follows full briefing and a hearing on the motion.
6    Innospan's alleged facts include the following. Innospan and its related companies have
7 been using a "mint" mark continuously since July 2005. These companies have done business
8 in the fields of "high speed Internet solution, IT consulting service, movable printer sales &
9 service, and social networking site" (Br. 2). Defendants Intuit and Mint are in the business of
10 providing free online personal financial services, and they have used several mint marks in
11 connection with this business. Innospan's allegations regarding the use of these marks are
12 summarized in the table below:

| Mark | Period of Use | Entity or Entities Using Mark |
|---|---|---|
| mint | "continuously since July, 2005" | Innospan and related companies |
| MINT | "after March, 2006 until March, 2007" | Mint |
| mint | "from April to August, 2007" | Mint |
| mint | "from September, 2007 to November, 2008" | Mint |
| mint | December 2008 to date (Mint) November 2009 to date (Intuit) | Mint and Intuit |

1  (Br. 2). Due to Mint and Intuit's use of these marks, Innospan "suffered losses stemming from
2  actual confusion by its potential business partner" (Br. 2).

3  In the early months of 2006, Shasta considered investing in Innospan, and Innospan sent
4  Shasta several business plans displaying the Innospan mint mark. Shasta declined to invest in
5  Innospan in or about May 2006, and about a year later (in or about March 2007), Shasta
6  invested in Mint (Br. 2–3). Based on its factual allegations, Innospan infers that "it is very likely"
7  that Mint produced its second mint mark "by converting" Innospan's mint mark with Shasta's
8  help (Br. 2).

## ANALYSIS

10  "A preliminary injunction is a drastic and extraordinary remedy that is not to be routinely
11  granted." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004)
12  (internal quotation omitted). "A plaintiff seeking a preliminary injunction must establish that he
13  is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of
14  preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the
15  public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Regarding
16  the second element, the Supreme Court requires plaintiffs to demonstrate that irreparable injury is
17  *likely* in the absence of an injunction, not merely "possible." *Iibid.* at 375. "Issuing a preliminary
18  injunction based only on a possibility of irreparable harm is inconsistent with our characterization
19  of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing
20  that the plaintiff is entitled to such relief." *Id.* at 375–76.

21  This order finds that Innospan has not established that it is likely to suffer irreparable
22  harm in the absence of preliminary relief, and that a preliminary injunction therefore is not
23  appropriate. Because Innospan's failure to establish this element is sufficient grounds to deny its
24  motion, this order does not reach the question of whether Innospan established any of the other
25  *Winter* elements.

26  With respect to Shasta, there simply is no ongoing conduct to enjoin. All of the harm
27  Innospan claims to suffer results from Mint and Intuit's use of mint marks. Any role Shasta may
28  have played in enabling Mint and Innospan to use these marks ended years ago — when Shasta

3

1  allegedly helped Mint "convert" Innospan's mark "in or about March, 2007" (Br. 2).  Innospan
2  does not accuse Shasta of using mint marks itself or of engaging in any other ongoing conduct
3  that causes harm to Innospan.  As such, Innospan has failed to establish that it is likely to suffer
4  *any* harm in the absence of a preliminary injunction against Shasta.  This failure alone is
5  sufficient to deny Innospan's motion as to Shasta.

6  With respect to Intuit and Mint, the bulk of the alleged harm caused by their conduct
7  already has occurred.  Innospan alleges that Mint has been using infringing marks since April
8  2007, but Innospan did not file this action until September 2010 (over three years later) and did
9  not request preliminary relief until over a month after filing suit.  As was the case with another
10 recent trademark infringement plaintiff requesting a preliminary injunction, "[t]he undisputed fact
11 that plaintiff did not timely act to prevent [defendant's mark] from inundating the market is *alone*
12 sufficient to deny the instant motion."  *Edge Games, Inc. v. Elec. Arts, Inc.*,
13 No. C 10-02614 WHA, 2010 WL 3895533, at *13 (N.D. Cal. Oct. 1, 2010) (Alsup, J.).  In *Edge*
14 *Games*, the plaintiff waited more than three years after the accused product name was announced
15 and 21 months after the product was publicly offered for sale before seeking a preliminary
16 injunction.  Because of that delay, the bulk of the alleged harm to the asserted marks had already
17 been done, and Edge Games "ha[d] not shown why issuing a preliminary injunction now would
18 prevent any irreparable harm to its marks beyond the 'harm' that ha[d] already occurred."  *Ibid*.

19 So too here.  Innospan makes excuses for its delay (over three years since the alleged
20 infringement began and over a month since filing suit), but those excuses are beside the point
21 (*see* Reply Br. to Intuit's Opp. 12–13).  In its allegations regarding the likelihood of irreparable
22 harm absent a preliminary injunction, Innospan claims to have suffered loss of control over the
23 mint mark, loss of goodwill, and loss of trade (Br. 22–24).  But Innospan does not establish that
24 further losses are imminent — or, indeed, that it has anything left to lose.  Innospan waited to
25 request preliminary relief until after it already had suffered the bulk of its alleged harm, and
26 Innospan has not shown why issuing a preliminary injunction now would prevent any irreparable
27 harm beyond the damage already done.  As in *Edge Games*, these failures are sufficient to deny
28 Innospan's motion.

4

1    Innospan makes two arguments as to why it has established that it is likely to suffer
2 irreparable harm in the absence of preliminary relief. Neither argument is persuasive. *First*,
3 Innospan asserts that "[i]t is ordinarily presumed that a plaintiff who has shown likelihood of
4 confusion will suffer irreparable injury absent injunctive relief" (Br. 22). Innospan cites a 1987
5 decision from the Ninth Circuit to support this proposition. Following the Supreme Court's 2008
6 decision in *Winter*, however, irreparable harm cannot be presumed — even for trademark actions.
7 *Edge Games*, 2010 WL 3895533, at *12. Thus, even if Innospan had shown likelihood of
8 confusion (a question this order need not reach), that alone would not carry the burden of
9 establishing a likelihood of irreparable harm absent preliminary relief.

10    *Second*, Innospan argues that "a plaintiff's loss of control over their business reputation,
11 loss of trade and loss of goodwill" typically constitute irreparable harm in trademark cases
12 (Br. 22). Regarding loss of control, Innospan cites two examples of "evidence that Plaintiff lost
13 control over the use of" its mark: (1) "the fact that Defendants were able to create three
14 derivative logos based on" Innospan's mark; and (2) that "their irresponsible use coupled with
15 intense campaign to promote their mark created many opportunities for others to create and
16 misuse similar marks" (*ibid.* at 23). Beyond this narrative of how Innospan "*lost* control" of the
17 mint mark, Innospan does not allege that it maintains any modicum of control over the mark that
18 would be jeopardized without a preliminary injunction.

19    Regarding loss of trade and goodwill, Innospan alleges that it lost a valuable business
20 opportunity when a repeat customer found Mint's website, thought it was Innospan's website,
21 erroneously inferred that Innospan had ceased the high-speed internet business, and took his
22 business offer elsewhere (*id.* at 22). Innospan speculates that "even now, there may be another
23 similarly confused business customer deciding to turn another business opportunity to some other
24 company" (*id.* at 22–23 n.15). These statements do not establish a likelihood of irreparable harm
25 absent preliminary relief. Financial losses typically do not constitute irreparable harm, because
26 they can be adequately compensated in the course of litigation. *Cal. Pharmacists Ass'n v.*
27 *Maxwell-Jolly*, 563 F.3d 847, 851–52 (9th Cir. 2009). Moreover, Innospan's isolated example of
28 an alleged past loss combined with speculation about the future may establish that further losses

5

are *possible*, but Innospan has not satisfied the Supreme Court's requirement of showing that such losses are *likely*. *See Winter*, 129 S. Ct. at 375–76.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction is **DENIED**. Defendants Intuit and Mint's administrative motion for leave to file a supplemental request for judicial notice is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: December 3, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE