IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INNOSPAN CORP.,

    Plaintiff,

  v.

INTUIT, INC., MINT SOFTWARE, INC., SHASTA VENTURES GP, LLC, AARON PATZER, JASON PUTORTI, TOD FRANCIS and DOES 1–20,

    Defendants.

                               /

No. C 10-04422 WHA

**ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**

### INTRODUCTION

In this trademark infringement action, plaintiff Innospan Corporation moves for leave to file a third amended complaint. For the reasons stated below, the motion to file a third amended complaint is **DENIED IN PART** and **GRANTED IN PART**.

### STATEMENT

In 2005, Hong-Seok Kim founded Mint Communications, Inc., the predecessor to plaintiff Innospan Corporation (referred to herein as "Mint Com"). Mint Com was engaged in high-speed internet solutions and IT consulting services (Third Amd. Compl. ¶¶ 18, 19). In 2005, Mint Com allegedly hired a graphic designer, May Guo, to develop a logo (*id.* at ¶ 20). The logo depicts the word "mint" in dark green; a stylized mint leaf tops the letter "I" in the word "mint." Plaintiff

Innospan Corporation and its related companies have been using the "mint" mark continuously since July 2005.

In 2006, John Park, an attorney who represented Mint Com, sent Mint Com's business plans via e-mail to defendant Tod Francis, managing director of Shasta Ventures GP, LLC, and to Shasta employee Jason Pressman. The e-mail was sent "as a means to open a potential investment discussion with Shasta" (*id.* at ¶ 25). The e-mail contained a disclaimer within its automated signature which read: "this e-mail message is intended for the personal use of the recipient(s) named above . . . this message may be . . . privileged and confidential . . . if you are not an intended recipient, you may not review, copy or distribute." The following phrase was printed at the bottom of each page of the business plan: "This document contains confidential and proprietary information that belongs exclusively to Mint Communications, Inc."

The business plan was forwarded to Rob Coneybeer of Shasta for review. In February 2006, Coneybeer contacted Kim to request another copy of the business plan. Kim replied with a short e-mail with the business plan attached. Kim's e-mail stated: "I would like to ask you not to share our information with anybody or any [venture capitalists]" (*id.* at ¶ 30). Plaintiff alleges that Coneybeer replied but did not object to or disagree with the request for confidentiality. Subsequently, Kim met with Coneybeer. At the meeting, Coneybeer allegedly expressed interest in the "mint" mark. Kim sent an additional version of the business plan, marked with a proprietary stamp, in May 2006.

Ultimately, Shasta declined to invest in Mint Com around May 2006. About a year later, Shasta invested in defendant Mint Software, Inc., an unrelated business devoted to providing free online personal financial services (*id.* at ¶¶ 35, 36). Defendant MSI has used several different mint marks in connection with this business between 2006 and 2010. Defendant Intuit, Inc. purchased MSI in 2009.

In 2007, MSI hired Jason Putorti to work on its logo design. Plaintiff alleges that "immediately after Rob Coneybeer of Shasta first met with Aaron Patzer [CEO] of Mint Soft," Mr. Putorti "suddenly changed" the design to one identical to the claimed mark (*id.* at ¶ 38). Innospan alleges that Shasta sent the business plans, without permission or authorization, to MSI

2

and that MSI subsequently used the plans "in connection with the creation of" their own logo (*id.* at ¶¶ 63, 64).

In September 2010, plaintiff filed suit against defendants in the Santa Clara County Superior Court, reciting seven claims: (1) conversion (against Intuit, MSI, and Shasta); (2) infringement of unregistered mark (against Intuit and MSI); (3) common law misappropriation and unfair competition (against Intuit and MSI); (4) state and common law misappropriation and unfair competition (against Shasta); (5) state statutory unfair competition (against, Intuit, MSI and Shasta); (6) declaratory relief (against Intuit and MSI); and (7) unjust enrichment (against MSI and Shasta). Shasta, Intuit, and MSI removed the action to federal court and brought motions to dismiss on all claims.

A December 2010 order granted motions to dismiss on two of the seven claims: (1) conversion and (2) unjust enrichment. The order gave leave to amend the deficient claims (Dkt. No. 73 at 7, 8). Plaintiff requested further clarification. The clarification order specified that plaintiff's claim for conversion was dismissed without leave to amend as a matter of law (Dkt. No. 77 at 1). Plaintiff then moved for leave to file a second amended complaint.

At the hearing regarding plaintiff's second amended complaint, plaintiff's attorney revealed that he had failed to bring all cognizable claims as a result of his misunderstanding of the clarification order (Dkt. No. 98 at 11). Due to this confusion, the Court gave plaintiff one final opportunity to plead its best case. A subsequent January 2011 order instructed plaintiff to "plead factual support for the claims with specificity . . . Pleading generalized legal theories will not be adequate. The burden is on plaintiff to demonstrate an ability to make viable pleadings, and this will be plaintiff's last chance to do so" (Dkt. No. 96 at 1, 2).

Pursuant thereto, plaintiff now moves for leave to file a third amended complaint, reciting thirteen claims: (1) breach of implied contract (against Shasta); (2) conversion of business plans (against Shasta, Intuit and MSI); (3) resulting trust (against Shasta); (4) negligence (against Shasta); (5) infringement of an unregistered trademark (against Intuit and MSI); (6) copyright infringement (against Intuit and MSI); (7) contributory Lanham Act infringement (against Aaron Patzer, Jason Putorti and Tod Francis); (8) contributory copyright infringement (against Aaron

3

Patzer, Jason Putorti and Tod Francis); (9) common law misappropriation and unfair competition (against Intuit and MSI); (10) aiding and abetting (against Shasta and Jason Putorti); (11) violation of California Business and Professions Code § 17200; (12) declaratory relief (against Intuit and MSI) and (13) unjust enrichment (against Shasta, Intuit and MSI).

## ANALYSIS

**1.   REQUEST FOR JUDICIAL NOTICE**

FRE 201 provides, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may take judicial notice of documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (citation omitted).

Defendant Shasta seeks judicial notice of Exhibit A, attached to the declaration of Margaret Branick-Abilla (Dkt. No. 108-1). Exhbit A is a series of e-mails between Innospan predecessor Mint Com and Shasta. Plaintiff cites these e-mails in its third amended complaint but does not attach them to the complaint. Plaintiff does not oppose Shasta's request or question the authenticity of the exhibit. As Exhibit A was previously attached to the sworn declaration of plaintiff's founder, there is no question as to the authenticity of the document. Because the e-mails' contents are cited in the complaint and there is no question as to their authenticity, the request for judicial notice is **GRANTED**. This order takes judicial notice of defendant Shasta's Exhibit A.

**2.   AMENDED CLAIMS**

Plaintiff seeks to amend the previously dismissed claims for (1) conversion and (2) unjust enrichment. FRCP 15(a)(2) states that a court should freely give leave to amend when justice so requires. Leave to amend may be denied, however, if the proposed amendment is futile or would be subject to dismissal. *Saul v. United States*, 928 F2d 829, 843 (9th Cir. 1991).

4

**A.     Conversion of Business Plans (against Shasta, Intuit and MSI)**

Under California law, a claimant must plead three elements to state a claim for conversion:  (1) ownership or right to possession of personal property; (2) a defendant's wrongful interference with the claimant's possession; and (3) damage to the claimant.  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 394 (Cal. Ct. App. 2007).  Additionally, a claimant in a conversion action must prove that it did not consent to the defendant's exercise of dominion over its property.  *Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).

A December 2010 order dismissed plaintiff's conversion of trademark claim on the grounds that the conversion tort does not extend to intangible intellectual property rights in trademark (Dkt. No. 73 at 3).  Instead, the order found that the Lanham Act is the "appropriate legal avenue for trademark infringement, not conversion" (*id.* at 4).  The order dismissed the conversion claim.  A subsequent order for clarification specified that the conversion claim was dismissed *without leave to amend* (Dkt. No. 77 at 1).

Despite the clear and repeated rejection of this theory, plaintiff nevertheless proposes another claim for conversion.  Plaintiff now alleges that Shasta converted trade secrets consisting of Mint Com's "business plans, business planning documents, and product plans" all of which were marked with the mint mark (Dkt. No. 99 at 7).

Defendants argue that "the proposed amendment still relies on the premise that trademarks can be the subject of a conversion claim" (Intuit Opp. 9, 10).  This order agrees.  By changing the object of the conversion from "trademark" to "business plans," plaintiff seeks to anchor its intangible trademark to physical documents.  Plaintiff attempts to side-step the fact that intangible intellectual property cannot be subject to conversion as a matter of law.  Additionally, plaintiff ignores the specific instructions of the clarification order that plaintiff itself requested.

Plaintiff insists that a claim for conversion of business plans is legally supported.  In *TeraRecon v. Fovia*, the plaintiff properly pled conversion of business plans containing trade secrets.  2006 U.S. Dist. LEXIS 48833 at *26–28 (N.D. Cal. July 6, 2006) (Wilken, J.).  *TeraRecon* is not binding;  further, it is distinguishable.  In that decision, the plaintiff alleged that

5

the defendants converted its trade secrets including "business plans and other corporate planning documents; and product plans." *Id.* at *31. In the instant action, plaintiff alleges that defendants converted its trade secrets, comprised of "business plans, business planning documents and product plans" (Dkt. No. 99 at 7). Plaintiff does not, however, set forth any facts indicating that the business plans contained trade secrets. Under California law:

> 'Trade secret' means information . . . that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

CAL. CIV. CODE § 3426. Plaintiff does not, for instance, allege that the business plans derived economic value from being generally unknown. Plaintiff's reliance on *TeraRecon* is, therefore, misplaced.

As the December 2010 order stated, courts within the Ninth Circuit have yet to find "intangible intellectual property rights in a trademark" (Dkt. No. 73 at 3). Since *TeraRecon*, "subsequent California cases addressing the application of the conversion tort to intangible intellectual property have suggested that this theory should not be expanded to displace other, more suitable law." *Tethys Bioscience, Inc. v. Mintz, et al.*, No. 09-5115 CW, 2010 WL 2287474, at *7 (N.D. Cal. June 4, 2010) (Wilken, J.) (citation omitted). Again, the more suitable law in the instant action is the Lanham Act. The December 2010 order dismissed the conversion claim without leave to amend because the deficiencies in the complaint could not possibly be cured by amendment. So too here. Innospan's motion for leave to amend this claim is **DENIED**.

### B. Unjust Enrichment (against Shasta and Jason Putorti)

The basic elements of unjust enrichment are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000). The December 2010 order found that "a claim for unjust enrichment is properly pled as a claim for a contract implied-in-law" (Dkt. No. 73 at 7). A contract implied-in-law arises where "no actual agreement between the parties occurred, but where a duty is imposed by equity to prevent injustice." 66 Am. Jur. 2d Restitution and Implied Contracts § 6 (2010). It "does not lie when an enforceable, binding agreement exists defining the

rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). In California, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (Cal. Ct. App. 2004). Thus, in order to properly state a claim for unjust enrichment, Innospan would have to either (1) allege that the parties' rights were not squarely set out in a binding agreement, or (2) allege that an express contract was procured by fraud or was ineffective for some reason.

Innospan alleges that there was no binding written or oral agreement between plaintiff and any of the defendants which would have squarely set forth the parties' rights. In fact, "there were no agreements between Shasta and MintCom/Innospan or between [MSI]/Intuit and MintCom/Innospan" (Third Amd. Compl. ¶ 124). Defendants argue that plaintiff cannot cure the claim by merely admitting that there was no contract (Intuit Opp. 11). Not so. Plaintiff alleges that there were no agreements setting forth the rights of the parties; this is sufficient to plead a contract implied-in-law. The Court cannot tell yet whether the actual circumstances would warrant implying a duty in equity to prevent injury. As the action moves forward, we will see whether the circumstances are compelling enough to compel the exercise of equity.

Defendant Shasta argues that since the misappropriation claim was dismissed as to Shasta, the proposed amendment, which rests on the misappropriation claim, should be denied as to Shasta (Dkt. No. 106 at 22, 23). The possibility of unjust enrichment relief, however, does not rest on any one claim. Rather, at the end, the Court must consider whether the circumstances, in their totality, warrant such relief. At least for purposes of preserving it as a mode of possible relief, the motion to amend the unjust enrichment claim is **GRANTED**.

**3.  NEW CLAIMS**

Plaintiff also moves to add new claims for (1) breach of implied contract; (2) resulting trust; (3) negligence; (4) contributory trademark infringement; (5) copyright infringement; (6) contributory copyright infringement; and (7) aiding and abetting.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff's obligation to provide the

7

grounds of his entitlement to relief requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1986–87.

In the instant action, the pleading requirement is further heightened by the Court's January 2011 order requiring plaintiff to "plead factual support for the claims with specificity. . . . Pleading generalized legal theories will not be adequate. The burden is on plaintiff to demonstrate an ability to make viable pleadings, and this will be plaintiff's last chance to do so" (Dkt. No. 96 at 1, 2).

### A.  Breach of Implied Contract (Against Shasta)

Plaintiff would add a claim for an implied-in-fact contract to keep certain information confidential. A contract implied-in-fact arises when the assent of the parties is manifested by conduct rather than words. This claim fails. The only mention of confidentiality in the January 31 e-mail appeared in the e-mail's automated signature which read: "this e-mail message is intended for the personal use of the recipient(s) named above . . . this message may be . . . privileged and confidential . . . if you are not an intended recipient, you may not review, copy or distribute." This automated signature did not, however, create a binding contract to keep the contents confidential. The purpose of such a signature is merely to advise the recipient that the communication is potentially privileged. While an implied contract is created through conduct rather than words, there must be intent to contract. There is no meeting of the minds or intent to contract based on this boilerplate disclaimer. Thus, there can be no implied-in-fact contract based on the January 31 e-mail.

Plaintiff alternatively argues that the implied-in-fact contract was created in the February 2006 e-mail in which plaintiff requested: "I would like to ask you not to share our information with anybody or any [venture capitalists]." By the time plaintiff made this request, however, Coneybeer had already received the business plan from Mint Com's counsel in the January 31 e-mail. By plaintiff's own admission, the February 2006 e-mail merely contained a

8

"condensed version" of the business plan that was already in Coneybeer's possession. Plaintiff cannot expect to retroactively attach a duty of confidentiality where none existed before.

It is trickery to send an unsolicited business plan to someone the sender thinks is a potential business investor and then to foist confidentiality duties on that recipient without his agreement in advance. If the sender wants to keep the information confidential, he must extract the promise to do so *before* revealing the alleged crown jewels. Because Shasta's receipt of the initial business plan was not conditioned on any agreement of confidentiality, this order holds that the subsequent e-mail did not create an implied-in-fact contract. This order rejects plaintiff's theory of retroactive bootstrapping.

Plaintiff argues that because the business plan itself was marked as "proprietary" and "confidential," defendant implicitly agreed to maintain confidentiality (Dkt. No. 114 at 3). A rote stamp cannot, in and of itself, create an implied-in-fact contract. Thus, this argument too must fail. Again, plaintiff should have extracted a promise up front rather than to trust the crown jewels to chance and litigation.

The Ninth Circuit has made clear that there must be bargained-for consideration for an implied contract to exist: "[t]he party claiming breach must show that, in return for the promise, it conferred some benefit the other party was not already entitled to receive, or suffered some prejudice it was not already bound to endure." *Kremen v. Cohen*, 337 F.3d 1024, 1028 (9th Cir. 2003) (citing CAL. CIV. CODE § 1605). Plaintiff argues that it conferred a benefit upon Shasta when it sent the business plan and that Shasta was "never entitled to receive" this benefit (Dkt. No. 114 at 3). Plaintiff alternatively argues that Mint Com "suffered some prejudice" when it sent Shasta the second business plan. For the following reasons, these arguments fail.

*First*, plaintiff says that Shasta was not entitled to receive the business plan — but plaintiff sent Shasta the business plan freely and voluntarily in hopes that it would inspire Shasta to invest in Mint Com. In other words, plaintiff had no intent to confer a benefit on Shasta — rather, plaintiff was soliciting Shasta. *Second*, plaintiff does not allege what exact benefit Shasta allegedly derived from the business plan; it merely parrots the language of the *Kremen* decision. *Third*, plaintiff vaguely alleges that Mint Com "spent resources" to send the second business plan.

9

This is simply not credible. Once again, Mint Com *voluntarily* chose to send the second business plan. Plaintiff cannot now charge defendant for whatever expenses it incurred in doing so. Plaintiff's motion as to the breach of implied contract claim is **DENIED**.

### B. Resulting Trust (against Shasta)

Plaintiff states a claim for a "resulting trust." A resulting trust is generally not a claim, rather it is "an equitable remedy designed to prevent unjust enrichment and to ensure that legal formalities do not frustrate the original intent of the transacting parties." 76 Am. Jur. 2d. Trusts § 135 (2010). Some California courts, however, have allowed parties to bring a claim for a resulting trust. *See, e.g., Fidelity Nat'l Title Ins. Co. v. Schroeder*, 179 Cal.App.4th 834, 850 (Cal. Ct. App. 2009).

Plaintiff states that, despite having voluntarily sent business plans to Shasta, it never intended for Shasta to take "beneficial interests in any information or the business plans itself" and that a resulting trust should be imposed in the interest of justice (Dkt. No. 99 at 7). Defendants argue that in order to create a resulting trust, the parties must have the intent to create a trust. True, "a resulting trust carries out and enforces the inferred intent of the parties." *Lloyds Bank California v. Wells Fargo Bank*, 187 Cal.App.3d 1038, 1042 (Cal. Ct. App. 1986). Plaintiff does not allege that the parties had any intent to create a trust. Instead, plaintiff maintains that lack of intent does not bar the imposition of a resulting trust under *Lloyds Bank*; plaintiff is plainly mistaken. *See also Calistoga Civic Club v. City of Calistoga*, 143 Cal. App. 3d 111, 117 (Cal. Ct. App. 1983). The language of those decisions unequivocally supports the opposing view. A trust implied without regard for the parties' intent is properly pled as a constructive trust. 13 Witkin, Summary 10th Trusts, § 1, p. 566 (2005). Plaintiff's resulting trust claim, therefore, fails.

Again, before sending the supposed crown jewels for inspection, plaintiff should have extracted a promise of confidentiality or trust up front, rather than merely teeing up a lawsuit. The motion to add this claim is **DENIED**.

**C.     Negligence (against Shasta)**

Presumably due to error on plaintiff's part, paragraphs 70–74, which fall under the subheading "negligence," merely read "[deleted]" (Third Amd. Compl. ¶¶70–74). It is unclear whether plaintiff meant to bring a negligence claim and accidentally deleted it or if plaintiff considered bringing a negligence claim and decided against it. Plaintiff has failed to offer any explanation for the deleted portions, despite having the opportunity to do so in the reply brief. As such, leave to add the new claim for negligence is **DENIED**.

**D.     Contributory Trademark Infringement (against Aaron Patzer, Jason Putorti, and Tod Francis)**

Liability for trademark infringement and unfair competition may extend beyond those who directly infringe, to include those contributory infringers who knowingly cooperate in tortious activity. *See William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 530–31 (1924) (applying common law concept of contributory infringement). If a manufacturer or distributor intentionally induces another to infringe a trademark, or has reason to know is engaged in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as result of the deceit. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982).

Plaintiff asserts that defendants Aaron Patzer, Jason Putorti and Tod Francis are contributorily liable for trademark infringement. Defendant Tod Francis is the managing director of Shasta. Defendant Aaron Patzer is the CEO of MSI. Jason Putorti is the former lead designer at MSI. Plaintiff argues that each of these defendants is liable because "[A] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). Plaintiff fails, however, to allege any facts demonstrating that defendants "authorized," "directed," or "participated" in trademark infringement. Instead, plaintiff offers unsubstantiated accusations and conclusory theories, none of which proves persuasive. For example, plaintiff asserts that "it is more likely than not that Mr. Francis was the guru director" and "actively advised MSI in its adoption and use of the infringing trademarks" (Dkt No. 99 at 10). While a court "must take all

11

of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009).

Defendants aver that they had no knowledge of plaintiff's trademark prior to the independent creation of the MSI mint leaf logo. Plaintiff offers no facts to rebut defendants' sworn declarations. Defendants also submit substantial exhibits detailing the creative process by which MSI adopted the mint leaf logo. Particularly persuasive are the documents detailing the development of MSI's mark between January and September of 2007 (Dkt. No. 111). These documents include e-mails, mock-ups and numerous iterations of the mint mark as well as detailed discussions between defendants and other MSI employees collaborating to develop the mark.

Tellingly, plaintiff offers no evidence to refute these documents. Instead, plaintiff suggests that defendants have withheld or tampered with documents in the discovery process (Dkt. No. 113 at 2). This order has considered the evidence plaintiff offers to support this contention and found it to be mere speculation and supposition without proof. This order, therefore, disregards plaintiff's unfounded accusations, in favor of the proof that does exist.

Plaintiff's reliance on *Louis Vuitton Malletier S.A. v. Akanoc Solutions* is misplaced because the decision not binding; further, it is distinguishable. 2010 U.S. Dist. LEXIS 85266 JW, at *50 (N.D. Cal. March 19, 2010) (Ware, J.). That decision dealt with the question of whether a corporate officer could be held personally liable for tortious acts committed in his professional capacity. The decision found that the corporate officer was liable because he had "complete control," "principal decision-making authority," and "was clearly the 'central figure' in the challenged corporate activity." *Id.* at *51–52. Plaintiff offers no facts to support the contention that Mr. Patzer, Mr. Francis or Mr. Putorti ever had this level of control or input. Defendants' mere involvement in the development of the mark is insufficient to establish "complete control" or "principal decision-making authority." Based on the foregoing, plaintiff's motion to add a claim for contributory trademark infringement is **DENIED**.

**E.     Copyright Infringement (against Intuit and MSI)**

In order to state a claim for direct copyright infringement, plaintiff must satisfy two requirements: "(1) [plaintiff] must show ownership of the allegedly infringed material and (2) [plaintiff] must demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

To demonstrate ownership, plaintiff offers evidence that its application for copyright registration is pending with the U.S. Copyright Office (Dkt. No. 28-1 at 46). Defendant Intuit argues that plaintiff has not demonstrated ownership but, by defendant's own admission, this prong is satisfied where plaintiff has completed an application to register its subject matter with the copyright office. *See Cosmetic Ideas, Inc. v. IAC/InteractiveCorp, et al.*, 606 F.3d 612, 621 (9th Cir. 2010). Thus, plaintiff satisfies the first prong.

Plaintiff has also satisfied the second prong by alleging that defendant has violated its right to reproduce the protected subject matter (Third Amd. Compl. ¶ 91). Defendant Intuit argues that plaintiff has failed to allege specific facts supporting any copying of the work. In order to demonstrate copying, a party must show: (1) that the works in question are substantially similar in their protected elements and (2) that the infringing party had access to the copyrighted work. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citation omitted). Plaintiff does not merely allege that the disputed logos are "similar"; plaintiff alleges that they are "identical" (Third Amd. Compl. ¶ 40). Plaintiff also alleges that defendant Intuit "had access" to the claimed mark through Tod Francis of Shasta. Thus, the second prong is satisfied and plaintiff has adequately stated a claim for copyright infringement.

Defendant Intuit seeks to undermine plaintiff's claim by suggesting that the mint mark is not copyrightable subject matter. Because that issue is currently pending before the U.S. Copyright Office, this order does not consider whether plaintiff's mark meets the criteria for copyrightable subject matter. Plaintiff's motion to add a new claim for copyright infringement is **GRANTED**.

13

### F. Contributory Copyright Infringement (against Aaron Patzer, Jason Putorti, and Tod Francis)

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Our court of appeals has interpreted this to mean that "one contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement. *Perfect 10, Inc., v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir.2007). To state a claim for contributory infringement, plaintiff must allege facts showing that defendant induced, caused, or materially contributed to the infringement. *Id.* at 796.

Plaintiff fails to allege facts demonstrating that defendants induced, caused, or materially contributed to the alleged infringement. Instead, plaintiff merely asserts legal conclusions. For example, plaintiff states that Aaron Patzer "intentionally induced and/or encouraged Mint Soft to directly infringe" (Third Amd. Compl. ¶ 94). Plaintiff offers no support whatsoever for this allegation. These conclusory allegations of law are insufficient to state a claim.

Plaintiff again alleges that Mr. Patzer, Mr. Francis and Mr. Putorti are personally liable as corporate officers relying on *Louis Vuitton*, a decision that is not binding and has been distinguished above. Because plaintiff fails to allege facts showing that defendants induced, caused, or materially contributed to copyright infringement, the motion to add a claim for contributory copyright infringement is **DENIED**.

### G. Aiding and Abetting (against Shasta and Jason Putorti)

Aiding and abetting focuses on whether a defendant knowingly gives "substantial assistance" to someone who performs wrongful conduct. 15A C.J.S. Conspiracy § 3 (2010). Liability may be imposed on one who aids and abets the commission of an intentional tort if the person (1) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (2) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 144 (Cal. Ct. App. 2005).

Plaintiff does not adequately state a claim for aiding and abetting. *First*, it is not clear which of the thirteen claims defendants are alleged to have aided and abetted. *Second*, plaintiff does not allege facts supporting the contention that Shasta and Mr. Putorti gave substantial assistance or encouragement to MSI in their adoption of the mark. True, "aiding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge, [but] not specific intent." *Marcelos v. Dominguez*, 2008 U.S. Dist. LEXIS 91155, at *25 (N.D. Cal, July 18, 2008). Still, in *Marcelos*, the complaint "describe[d] in detail the involvement" of the parties accused of wrongdoing. *Id.* at *26. By contrast, here the complaint merely hints at misconduct. Plaintiff alleges that "immediately after Rob Coneybeer of Shasta first met with Aaron Patzer [CEO] of Mint Soft," Mr. Putorti "suddenly changed" the design to one identical to the claimed mark (Third Amd. Compl. ¶ 38). This general inference of wrongdoing is insufficient, particularly in light of this court's admonishment to "plead factual support for the claims with specificity" (Dkt. No. 96 at 1, 2). As to the aiding and abetting claim, the motion is **DENIED**.

### 4. OTHER CLAIMS

Defendant Shasta argues that plaintiff's claim for statutory unfair competition under Section 17200 fails for reasons cited in their previous motion to dismiss. The Section 17200 claim survived the motion to dismiss and plaintiff has made no substantive amendments to this claim. Thus, an opposition to a motion for leave to file a third amended complaint is not the appropriate avenue for attacks on this claim. The same is true of the common law unfair competition claim and the claim for declaratory relief, both of which survived the motion to dismiss and have not been substantively altered in the third amended complaint. Defendant can bring a summary judgment motion on these claims in the future.

### 5. OTHER PROPOSED AMENDMENTS

Defendant Intuit contends that plaintiff's proposed third amended complaint contains amendments that are not addressed or justified in plaintiff's motion (Intuit Opp. 22). Intuit takes issue specifically with two proposed changes.

*First*, in the first amended complaint, plaintiff stated that Innospan founder Kim developed the mark in June 2005. By contrast, the proposed change states that Mint Com developed the mark and subsequently assigned the mark to Innospan. Defendant states that "plaintiff must explain the fundamental change in allegations before it is allowed leave to amend them" (Intuit Opp. 22). Not so. Under the Federal Rules, plaintiff is permitted to plead inconsistently, and "[t]he inconsistency may lie either in the statement of the facts or in the legal theories adopted." 2A MOORE'S FEDERAL PRACTICE 8.32, at 8-214 to 8-215 (2d ed. 1994).

Relying on *Reddy v. Litton*, defendant argues that the amended complaint may only allege "other facts consistent with the challenged pleading." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) (citing *Schreiber Distrib. Co. v. Serv Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Defendant, however, misconstrues the case law. *Reddy* cited to *Schreiber* for the proposition that "[i]f a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." This language does not support defendant's contention that plaintiff can only allege consistent facts in the proposed third amended complaint. Based on the foregoing, the proposed factual amendment is **GRANTED**.

*Second*, plaintiff adds to the prayer for relief, requesting a judicial declaration that "the trademark that Defendant Mint Software Inc.'s registered with the USPTO is invalid." Plaintiff also requests a court order directing the USPTO to "invalidate, withdraw and revoke" MSI's trademark. Plaintiff does not, however, allege any facts in the complaint that would justify these requests. Additionally, despite the January 2011 order's clear instruction, plaintiff fails to address these amendments in its memorandum. The proposed amendments to the prayer for relief are **DENIED**.

**CONCLUSION**

The motion for leave to file a third amended complaint is **DENIED IN PART** and **GRANTED IN PART**. Specifically, the motion is **DENIED** as to the proposed claims for conversion of business plans, breach of implied contract, resulting trust, negligence, contributory trademark infringement, contributory copyright infringement, aiding and abetting and the proposed changes

16

to the prayer for relief. The motion is **GRANTED** as to the proposed claims for unjust enrichment and copyright infringement, as well as the proposed factual amendment.

The following claims for relief remain in the case: (1) violation of Section 17200; (2) unregistered trademark infringement; (3) declaratory relief; (4) unjust enrichment; (5) copyright infringement; and (6) common law unfair competition and misappropriation. As stated in the January 2011 order, plaintiff now has exhausted its opportunity to plead new claims or amend existing claims. Plaintiff must file the third amended complaint in *strict conformity* with this order — with no further embellishments — by **NOON ON FRIDAY, MARCH 18, 2011**. If plaintiff attempts to slip unauthorized material in, as it did with the conversion claim discussed above, then counsel will likely be sanctioned. Counsel should get cracking and complete discovery on time. There will be no further motions to dismiss. Defendants must serve their answers by **NOON ON MONDAY, MARCH 28, 2011**.

**IT IS SO ORDERED.**

Dated: March 8, 2011

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE