1   RODGER R. COLE (CSB NO. 178865)
    rcole@fenwick.com
2   SONGMEE L. CONNOLLY (CSB NO. 228555)
    sconnolly@fenwick.com
3   JOSEPH S. BELICHICK (CSB NO. 229371)
    jbelichick@fenwick.com
4   SEAN S. WIKNER (CSB NO. 268319)
    swikner@fenwick.com
5   MOLLY MELCHER (CSB NO. 272950)
    mmelcher@fenwick.com
6   FENWICK & WEST LLP
    Silicon Valley Center
7   801 California Street
    Mountain View, CA  94041
8   Telephone:(650) 988-8500
    Facsimile:(650) 938-5200
9
    Attorneys for Defendants and Counter-Claimants
10  INTUIT INC. and MINT SOFTWARE INC.

11

12                          UNITED STATES DISTRICT COURT

13                        NORTHERN DISTRICT OF CALIFORNIA

14                            SAN FRANCISCO DIVISION

15   INNOSPAN CORP.,                          Case No. C10-04422 WHA (JCS)

16              Plaintiff,                     **NOTICE OF MOTION AND MOTION
                                               FOR SANCTIONS BY INTUIT INC. AND
17        v.                                   MINT SOFTWARE INC.;
                                               MEMORANDUM OF POINTS AND
18   INTUIT; MINT SOFTWARE INC.; and           AUTHORITIES IN SUPPORT THEREOF**
     SHASTA VENTURES GP, LLC,
19                                             Date:      July 1, 2011
                Defendants.                    Time:      9:30 a.m.
20                                             Dept:      A, 15th Floor
                                               Judge:     Honorable Joseph C. Spero
21
     INTUIT INC. and MINT SOFTWARE
22   INC.,

23              Counter-Claimants,

24        v.

25   INNOSPAN CORP. and HONG-SEOK
     KIM,
26
                Counter-Defendants.
27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.  INTRODUCTION ......................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................... 4

    A.  Case Background ................................................................................................ 4

    B.  Plaintiff Has Submitted False Testimony To the Court, Concealed
        Documents, and Tampered with Witnesses ........................................................ 6

        1.  Plaintiff Submitted False Testimony Regarding Discovery of
            Intuit's Mint Mark in Its TRO Application ............................................. 6

        2.  Plaintiff Submitted False Testimony in an Attempt to Establish
            Irreparable Injury in Support of Its TRO Application, Interfered
            with Corecess's and Yi's Subpoenas, and Tampered with
            Testimony ................................................................................................. 8

        3.  Plaintiff Concealed Its Relationship with Rivermark/Lee, Interfered
            with Lee's Subpoena and Tampered with Testimony .............................. 10

        4.  Plaintiff Altered Exhibits to Redact Material Information ..................... 12

    C.  Corecess and Yi Have Failed to Comply with Their Subpoenas and This
        Court's Discovery Order .................................................................................... 12

        1.  Corecess and Yi Failed to Comply with Intuit's Subpoenas before
            Their Scheduled Depositions ................................................................... 12

        2.  Yi's and Lee's Continued Discovery Noncompliance ............................. 14

        3.  Yi's Failure to Comply with the Court's Order ........................................ 15

            a.  Yi's First Failed Attempt at Compliance ..................................... 15

            b.  Yi's Second Failed Attempt at Compliance .................................. 16

            c.  Intuit's Request for Forensic Copies of Computer Media ............ 17

    D.  Lee Failed to Fully Comply with Intuit's Subpoena or the Court's Order ........... 17

III. ARGUMENT ................................................................................................................. 19

    A.  The Court Should Order Further Compliance, Including an Order Allowing
        Forensic Copies of All Corecess/Yi/Lee Computer Media and an Order
        Granting Access to Corecess/Yi Web-Based Email Accounts ........................... 19

1

**TABLE OF CONTENTS**
(continued)

2

Page(s)

3

B.    The Court Should Impose Substantial Monetary Sanctions ................................. 21

4

C.    The Court Should Grant Terminating Sanctions, Including Entering Default
Judgment, or Alternatively, Should Grant Evidentiary Sanctions, Including
Excluding Corecess and Yi as Witnesses............................................................ 22

IV.    CONCLUSION ............................................................................................................ 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fenwick & West LLP
Attorneys at Law
Mountain View

**TABLE OF AUTHORITIES**

**CASES**                                                          **PAGE**

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
   69 F.3d 337 (9th Cir. 1995) ................................................................. 23, 25

*Chambers v. Nasco, Inc.*,
   501 U.S. 32 (1991) ................................................................................. 22

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007) ............................................................... 24, 25

*Covad Comms. Co. v. Revonet, Inc.*,
   258 F.R.D. 5 (D.D.C. 2009) .................................................................. 20

*Gidatex, S.r.L. v. Campaniello Imports of Fla., Ltd.*,
   13 F. Supp. 2d 417 (S.D.N.Y. 1998) ..................................................... 7

*Green v. Blitz U.S.A. Inc.*,
   No. 2:07-CV-372(TJW), 2011 U.S. Dist. LEXIS 20353 (E.D. Tex. Mar. 1, 2011)..... 19

*Housing Rights Center v. Sterling*,
   No. CV 03-859, 2005 U.S. Dist. LEXIS 44769 (C.D. Cal. Mar. 2, 2005) .................. 19

*Ibarra v. Baker*,
   338 Fed. Appx. 457 (5th Cir. 2009)........................................................ 19

*In re Ford Motor Co.*,
   345 F.3d 1315 (11th Cir. 2003) ............................................................. 20

*John B. v. Goetz*,
   531 F.3d 448 (6th Cir. 2008) ................................................................. 20

*Kucala Enters., Ltd. v. Autowax Co.*,
   No. 02 C 1403, 2003 U.S. Dist. LEXIS 8833 (N.D. Ill. May 23, 2003) ..................... 25

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ................................................................. 19, 24

*Malone v. U.S. Postal Serv.*,
   833 F.2d 128 (9th Cir. 1987) ................................................................. 24

*Padgett v. City of Monte Sereno*,
   No. C 04 3946JW, 2007 U.S. Dist. LEXIS 24301 (N.D. Cal. Mar. 20, 2007)............. 20

*Philip M. Adams and Assocs. LLC v. Dell, Inc.*,
   621 F. Supp. 2d 1173 (D. Utah 2009)..................................................... 19

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
   55 F. Supp. 2d 1070 (C.D. Cal. 1999) ................................................... 7

*Playboy Enters. v. Welles*,
   60 F. Supp. 2d 1050 (S.D. Cal. 1999) ................................................... 20

*Protech Diamond Tools, Inc. v. Liao*,
   Case No. C 08-3684 SBA, 2009 U.S. Dist. LEXIS 53382 (N.D. Cal. Jun. 8, 2009) ......7

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**

*Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc.,*
   No. 05 C 4088, 2011 U.S. Dist. LEXIS 17623 (N.D. Ill. Feb. 23, 2011) .................... 24

*Simon Prop. Group v. mySimon, Inc.,*
   194 F.R.D. 639 (S.D. Ind. 2000) .................................................................................. 20

*Toth v. Trans World Airlines, Inc.,*
   862 F.2d 1381 (9th Cir. 1988) ............................................................................... 22, 23

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.,*
   857 F.2d 600 (9th Cir. 1988) ........................................................................................ 23

*Valley Eng'rs v. Elec. Eng'g Co.,*
   158 F.3d 1051 (9th Cir. 1998) ................................................................................. 1, 25

*Zubulake v. UBS Warburg LLC,*
   229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................................. 19

**STATUTES**

28 U.S.C. § 1927 ............................................................................................................... 22

**RULES**

Fed. R. Civ. P. 37 ......................................................................................................... 19, 25

Fed. R. Civ. P. 37(b)(2) .....................................................................................................21

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF ABBREVIATIONS

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

| | |
|---|---|
| April 26 Transcript | Transcript of telephonic hearing before the Honorable Joseph C. Spero on April 26, 2011 |
| Belichick Decl. | Declaration of Joseph Belichick in Support of PI Opp. (Dkt. # 71) |
| CAC | Document titled "Copyright Assignment Confirmation," produced by Plaintiff on April 21, 2011, bearing bates number PL_MINTCOM_0008001 (Ex. 18 to Cole Decl.) |
| Cole Decl. | Declaration of Rodger R. Cole in Support of Defendants Intuit Inc. and Mint Software Inc.'s Motion for Sanctions |
| Claimed Copyright | The Claimed Mark and "the leafy dot of the 'i' in 'mint' word" identified by Innospan in TAC ¶ 65 |
| Claimed Mark | Unregistered "mint" logo asserted by Plaintiff (mint) |
| Corecess | Corecess Global, Inc., U.S. affiliate of Corecess Korea Inc. |
| Corecess Korea | Corecess Korea Inc. |
| Discovery Letter | Letter from the Intuit Defendants to Judge Alsup, filed on April 12, 2011 (Dkt. # 136) |
| Discovery Order | Order on Discovery Compliance [Docket No. 136] (Dkt. # 151) |
| FAC | Plaintiff's First Amended Complaint (Dkt. # 5) |
| GleeU | Gleeu, Inc. |
| Guo | May Guo |
| Innospan or Plaintiff | Plaintiff Innospan Corporation |
| Intuit | Defendants Mint Software and Intuit Inc. |
| June 2 Discovery Letter | [Proposed] Joint Submission from Intuit to Judge Spero Regarding Plaintiff's Discovery Noncompliance, dated June 2, 2011 (Dkt. # 152) |
| Kim | Hong-Seok Kim |
| Kim Decl. I | Declaration of Hong-Seok Kim in Support of TRO App. (Dkt. # 27) |
| Kim Decl. II | Supplemental Declaration of Hong-Seok Kim in Support of TRO App. (Dkt. # 28) |
| Kim Decl. III | Reply Declaration of Hong-Seok Kim in Support of TRO App. (Dkt. # 57) |
| Kim Depo. | Deposition of Hong-Seok Kim, taken on March 8, 2011 (Ex. 18 to Cole |

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| | Decl.) |
| Lee | Christine Y. Lee, D.D.S. of Rivermark Dental |
| Lee Discovery Decl. | Declaration of Christine Lee Re Discovery Compliance, served on May 20, 2011 (Ex. 34 to Cole Decl.) |
| Lee Depo. | Deposition of Christine Lee, taken on March 11, 2011 |
| Lee Depo. II | Deposition of Christine Lee, taken on May 27, 2011 |
| May 11 Letter | Letter, dated May 11, 2011, from Intuit to Brian Song responding to Yi Discovery Decl. and supplemental document production (Ex. 27 to Cole Decl.) |
| Mint or Mint.com | Defendant Mint Software Inc. |
| MintComm | Mint Communications, Inc., Innospan's purported predecessor-in-interest |
| Mint Mark | Federally registered mark of the Intuit Defendants, consisting of stylized leaves having a dollar sign in one leaf with the word mint adjacent to the leaves, Reg. No. 3,526,377; variations include but are not limited to: (March 2007 to approximately August 2007); and (approximately September 2007 to present), |
| PI Motion or TRO Application | Plaintiff [*sic*] Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction and related documents (Dkt. ## 24-31), subsequently converted by the Court to a motion for preliminary injunction. |
| PI Opp. | Defendants Intuit Inc. and Mint Software Inc.'s Opposition to Plaintiff's TRO Application (Dkt. # 69) |
| Rivermark | Rivermark Dental |
| TAC | Plaintiff's Third Amended Complaint (Dkt. # 129) |
| Wikner Decl. | Declaration of Sean Wikner in Support of PI Opp. (Dkt. # 50) |
| Yi | Hon S. Yi or collectively, Hon S. Yi and Corecess |
| Yi Decl. | Declaration of Hon Yi in Support of TRO App. (Dkt. # 29) |
| Yi Discovery Decl. | Declaration of Hon Yi Re Discovery Compliance, served on May 6, 2011 |
| Yi Discovery Decl. II | Declaration of Hon Yi Re Discovery Compliance, served on May 24, 2011 (Ex. 28 to Cole Decl.) |
| Yi Depo. | Deposition of Hon Yi, taken on February 25, 2011 (Ex. 22 to Cole Decl.) |

**TABLE OF ABBREVIATIONS**

Yi Depo. II                Deposition of Hon Yi, taken on May 31, 2011 (Ex. 31 to Cole Decl.)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**NOTICE OF MOTION AND MOTION**

2       **PLEASE TAKE NOTICE** that on July 1, 2011, at 9:30 a.m., or as soon thereafter as this

3   matter may be heard, before the Honorable Joseph C. Spero, Courtroom A, 15th Floor at the U.S.

4   District Court for the Northern District of California, located at 450 Golden Gate Ave., San

5   Francisco, CA, Defendants Intuit Inc. and Mint Software Inc. (collectively, "Intuit") will and

6   hereby do move the Court for relief against Plaintiff Innospan Corp. ("Plaintiff" or "Innospan") and

7   its third-party witnesses, Corecess, Mr. Hon Yi ("Yi") and Dr. Christine Lee ("Lee"), including:  (1)

8   a further order compelling the production of all responsive documents in the possession, custody, or

9   control of Corecess, Yi, and Lee, including an order allowing Intuit to obtain (a) forensic copies of

10  all Corecess, Yi, and Lee computer media, (b) forensic copies of all available Corecess, Yi, and Lee

11  data held by third-party providers, and (c) an order that Plaintiff pay for all costs associated with the

12  forensic inspection; (2) monetary sanctions of $419,807.64 for the discovery noncompliance and

13  litigation misconduct of Plaintiff, Corecess, Yi and Lee; and (3) an order excluding Plaintiff from

14  relying on documents or testimony from Corecess, Yi or Lee; or (4) terminating sanctions against

15  Plaintiff, default judgment in Intuit's favor, plus recovery of Intuit's attorneys' fees and costs.  This

16  Motion is based on the following Memorandum of Points and Authorities, the Declaration of

17  Rodger Cole filed herewith including all exhibits, the pleadings and papers on file in this action,

18  any other such matters upon which the Court may take judicial notice, and argument to be presented

19  at the hearing on this Motion.

20  **MEMORANDUM OF POINTS AND AUTHORITIES**

21  **I.      INTRODUCTION**

22      "There is no point to a lawsuit, if it merely applies law to lies.  True facts must be the

23  foundation for any just result."  *Valley Eng'rs v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir.

24  1998).  As Judge Alsup noted, this trademark dispute is "on thin ice."  Knowing this full well,

25  Plaintiff and its witnesses have engaged in misconduct and discovery noncompliance in an effort to

26  prolong this litigation as long as possible.  Plaintiff presented false and misleading evidence to the

27  Court in a wrongful effort to obtain preliminary injunctive relief and has continued to interfere with

28  true facts by improperly tampering with witnesses and their discovery compliance.  This discovery

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    abuse and misconduct is so severe that it is now severely jeopardizing Intuit's ability to achieve a

2    fair resolution while exponentially increasing Intuit's attorneys' fees and costs.

3        Plaintiff has concealed facts, at best, and lied, at worst, to the Court. For example:

4    •    Plaintiff filed an *ex parte* application for a temporary restraining order on Oct. 27, 2010.
         TRO Application (Dkt. # 24-31). In the FAC, Plaintiff asserted that it was not aware of

5        Intuit's use of the Mint Mark until Aug. 2010 when a business partner alerted Plaintiff of the
         similarities in the marks. *See* FAC ¶ 35 (Dkt. # 5). In the TRO Application, Plaintiff again

6        claimed Kim learned of the Mint Mark in Aug. 2010, though its CEO, Kim, was more vague
         about it in his declarations. *See* TRO App. at 12 (Dkt. # 26); Kim Decl. II ¶ 18 ("very

7        recently") (Dkt. # 28); Kim Decl. III ¶ 42 ("this summer") (Dkt. # 57). In fact, Kim learned
         of Intuit's use of the Mint Mark by at least Apr. 27, 2010—six months before the TRO

8        Application was filed. Plaintiff did not admit this fact until confronted with Intuit records
         showing Kim had registered with Mint.com's website on Apr. 27, 2010. Faced with this

9        fact, Plaintiff amended its interrogatory responses to admit Kim learned of Mint Mark in
         "April or May 2010," and learned not from a "business partner" but from registering on

10       Mint.com's website. Cole Decl. at ¶¶ 25, 26, Ex. 16. In a shocking admission, at 7:06 p.m.
         on June 1, 2011, the night before this Motion and the Joint Submission were to be filed,

11       Plaintiff produced two emails Plaintiff received from Mint.com's website on Apr. 27, 2010
         and May 3, 2010. *Id.* at ¶¶ 5, 27, n.1. Exs. 9, 10. **How would Judge Alsup have treated the**

12       **TRO Application had he known that Plaintiff was aware of the Intuit's use of the Mint**
         **Mark for six months? Would Intuit have been forced to incur over $200,000 in legal fees**

13       **to defeat it if Plaintiff had been truthful?**

14   •    Plaintiff also unilaterally redacted exhibits filed with the Court in support of the TRO
         Application. The redacted portions included, *inter alia*, information regarding the true

15       nature of Kim's relationships with third-parties Yi and Lee (discussed below). In response
         to Intuit's demands for complete documents, Plaintiff represented that such redacted

16       information "[did] not have any bearings upon the motion at all." Only after repeated
         requests, Plaintiff produced unredacted documents to Intuit. To date, Plaintiff has not filed

17       unredacted versions of the documents with the Court.

18       Plaintiff has also tampered with the testimony of third-party witnesses and attempted to

19   conceal the tampering. For example, in support of its TRO Application, Plaintiff submitted the

20   Declaration of Hon Yi, a Vice-President at Corecess Global ("Yi Decl."). In his Declaration, Yi

21   asserted (a) Corecess was a "business partner/customer of Innospan (and its predecessor, Mint

22   Communications, Inc.)" from 2005 to 2007, (b) in Apr. 2010, Corecess was looking for a

23   business partner, and Yi wanted to contact Innospan, but Yi did not know Innospan's status so he

24   searched the Internet for "mint" and discovered Intuit's Mint.com, and (c) as a result of confusion

25   over the trademark, Yi gave a $15 million business opportunity to another company. Yi Decl. ¶¶

26   1-6 (Dkt. # 29). This is what Intuit discovered at Yi and Kim's depositions:

27   •    Kim was heavily involved in preparing the Yi Decl. and Kim, not Yi, came up with the $15
         million figure for the alleged lost business opportunity. Yi Depo. at 261:9-262:16; Kim

28       Depo. at 147:6-148:15.

     •    Yi asked for one change to his declaration—his title at Corecess—and saw two drafts of the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

declaration.  Yi Depo. at 261:9-262:16.  No draft declaration has been produced by Kim, Yi or Corecess.  Cole Decl. at ¶ 50.

- Despite claiming in his declaration that MintComm has been a Corecess "business partner," Yi testified that he was not aware of any commercial transactions between them.  Yi Depo. at 144:24-145:8; 148:11-17; 154:18-20.

- Yi recanted his testimony of a lost $15 million business opportunity, acknowledging that it should be removed from his Declaration.  Yi Depo. at 264:6-21; 266:1-6; 284:25-285:4.

    While Plaintiff could not prevent Yi's testimony, Plaintiff attempted to prevent Intuit's

discovery of evidence that would allow Intuit to test the veracity of Yi's testimony.  For example:

- Kim prepared and gave Yi a timeline of events that Kim viewed as important.  Kim even highlighted portions.  Kim included events where Yi, *not* Kim, would have personal knowledge.  Yi repeatedly attempted to rely on this script throughout his deposition.  Yi Depo. at 38:5-39:14; 211:22-212:8; 212:22-213:5; 254:10-13; 302:19-308:7; 317:3-13; 319:11-321:12.

- Plaintiff attempted to control the production of documents by Yi in response to Intuit's subpoena by producing 58 pages of "Yi's documents."  Three days before the deposition, after repeated demands by the Intuit Defendants for compliance with the subpoenas, Yi and Corecess produced only 19 pages of documents consisting of mere product specifications and a copy of Yi's passport.  Yi admitted at his deposition that he made no effort to identify documents to respond to the subpoena and admitted that he neither he nor Corecess were the source of the documents produced in response to the subpoena.  Yi Depo. at 51:4-9; 51:25-53:5; 55:12-56:4; 63:2-12; 63:24-64:5; 68:19-70:12; 73:12-19; 73:20-74:3; 78:15-79:18; 80:13-18; 82:6-8.  Yi even testified that he had never seen the 58 pages of documents.  Yi Depo. at 44:25-45:22; 67:3-68:1; 86:7-14; 86:21-87:9.  Yi further stated that he produced the additional 19 pages at his counsel's direction to show that he is a "very busy person."  Yi. Depo. 56:5-56:19.

- Plaintiff has concealed documents that undermine Yi's testimony.  After Yi's deposition and after many rounds of meeting and conferring about Corecess and Yi's failure to produce documents, Intuit told Plaintiff that it would file its April 12 Discovery Letter.  In a rush to convince Intuit to forego the filing, Corecess and Yi informally produced (*i.e.*, without bates numbers) several documents.  One document was a file named "c17.pdf" reflecting an email from Kim to Yi dated Nov. 4, 2010 with the subject line "head's up."  The email states:

    "A lawyer from Intuit might call you.  But you do not have to answer any of his question [*sic*] at this point.  You can say that you want to answer the questions through HS Kim's lawyer, Brian Song.  I double confirmed it with Brian that *you do not have any risk or liability in this legal matter*.  Attached is the [*sic*] your declaration you signed for me.  *The only important thing is that we need to be very consistent about what is written*."

    Cole Decl. at ¶ 58, Ex. 24 (emphases added).  Remarkably this document was not produced by Plaintiff, despite repeated demands until June 1, 2011, the eve of this filing.  *Id.* at ¶¶ 27, 58.

    Plaintiff has also tampered with the testimony of its other third-party witness, Lee.  In its

TRO Application, Plaintiff relied on its purported "Mint IT Consulting" business to establish use of

its Claimed Mark in commerce, citing Rivermark as a paying customer since 2005.  What Plaintiff

did not disclose to the Court was that the sole practicing dentist at Rivermark is Kim's wife, Lee.

Intuit was forced to discover and alert the Court of this fact in opposing the TRO Application.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Wikner Decl. ¶¶ 15-22 (Dkt. #50).  Once discovery opened, Intuit subpoenaed Lee.[1]  Plaintiff's and

Lee's responses to the subpoena were obstructionist, at best:

- Lee served **no** responses or objections, and produced **no** documents in response to the subpoena.  At the deposition, Lee testified that she made **no effort** to comply.  Why?  "My husband said he will take care of it."  Plaintiff's direct interference with an outstanding federal subpoena resulted in no information produced by Lee.  Lee Depo. at 63:14-64:12.

- During her deposition, after breaks and discussions with Kim, Lee would "clarify" her earlier testimony.  Lee Depo. at 152:2-16; 160:23-162:2.  At one point, Kim demanded that the deposition be stopped, Lee took a break, and returned to "clarify" her testimony.  *Id.*

- Even after the Court's Discovery Order, which includes clear warnings that witness tampering is serious and will not be accepted, **Kim once again tampered with Lee's testimony** at her May 27, 2011 deposition.  After a break, Lee returned to testify and immediately wanted to "clarify" two points from her testimony prior to the break.  Lee Depo. II at 221:1-222:6; Lee Video 1.  When asked if Kim told her to change her testimony, Lee responded that "He didn't ask me to do anything.  He just says 'Hey, how about this. Did' – so I said it."  Lee Depo. II at 222:18-223:11.  When asked what Kim told Lee, Lee was instructed not to answer on the grounds of marital privilege.  *Id.* at 223:16-18.

Intuit acknowledges that it is the exceptional case where evidence is so tampered with and compromised, and the discovery abuse is so pervasive, as to justify terminating sanctions.  Intuit respectfully suggests that this is the exceptional case.  If the Court, however, is not inclined grant terminating sanctions at this time, the Court should grant all other relief requested by Intuit to address this situation, including further orders compelling discovery and allowing for the recovery of electronic information, monetary sanctions associated with Intuit's discovering and defending against the falsehoods perpetuated to date by Plaintiff and its witnesses, and an order precluding Plaintiff from relying on any evidence related to Corecess, Yi, Rivermark or Lee.

## II.   **STATEMENT OF FACTS**

### A.   **Case Background**[2]

On Sept. 20, 2010, Plaintiff filed suit against Intuit and Shasta in Santa Clara County

Superior Court, alleging trademark infringement and other related claims.  Complaint (Dkt. # 1).

Intuit removed the case to this Court on Sept. 30, 2010 (*id.*), and filed a Motion to Dismiss on

Oct. 22, 2010.  Dkt. # 21.  On Oct. 27, 2010, Plaintiff filed its TRO Application (Dkt. # 24-31),

which the Court summarily denied and converted into a PI Motion, setting full briefing and a

---

[1]  Intuit has subsequently discovered, *inter alia*, that Lee is a significant investor in, and a former director of, both MintComm and Innospan, who even had authority to write checks on behalf of MintComm.

[2]  Intuit has not attempted to provide a full discussion of the factual, legal, and procedural background, but the docket items identified in this section, including the Court's orders, can be reviewed for a more complete discussion.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

hearing on Dec. 2, 2010 to consider the Motion to Dismiss and PI Motion at the same time.  Dkt. # 32.  Intuit opposed Plaintiff's PI Motion based on strong legal arguments and substantial evidence, including numerous witness declarations that showed Plaintiff was unlikely to succeed on its claims and could not show irreparable injury.  Dkt. ## 45-51, 69, 70.

Because the Court had received substantial evidence from the parties relating to the merits of Plaintiff's claims, Intuit requested that the Court exercise its discretion to convert the Motion to Dismiss into a summary judgment motion, consider the evidence submitted on Plaintiff's PI Motion, and grant summary judgment.  MTD Reply (Dkt. # 54).  Although the Court declined to decide the case on summary judgment,[3] the Court granted in part Intuit's Motion to Dismiss (Dkt. # 73) and denied Plaintiff's PI Motion, finding that Plaintiff "has not established that it is likely to suffer irreparable harm in the absence of preliminary relief."  Dkt. # 74 at 3.  The Court found that any alleged harm caused by Intuit's conduct has already occurred because of Plaintiff's lack of timely effort to prevent Intuit from using the Mint Mark, noting Plaintiff's "delay (over three years since the alleged infringement began and over a month since filing suit)."  *Id.* at 4.

The Court allowed Plaintiff to file a Motion for Leave to File a Second Amended Complaint, which Plaintiff did on Dec. 15, 2010.  Dkt. # 79.  At the hearing on the motion on Jan. 20, 2011, the Court considered Plaintiff's arguments but decided to give Plaintiff an opportunity to plead its "absolute best case" in a new motion for leave to amend.  Jan. 20 Hearing Trans. at 27.  The Court, however, strongly cautioned Plaintiff, stating:

> You've had plenty of opportunities to get this right.  ***Here are some of the things I'm very suspicious about in this case***.  It sounds to me like the only possible thing that overlaps here is the word "mint." . . . They were already using the word "mint." They already had a logo.  It was in no way stolen from the Plaintiff.  And that's what they are telling me.  ***And I don't see much proof to the contrary yet, because I remember what was in the motion for preliminary injunction.  So this entire case seems to be iffy to me.  I-F-F-Y, meaning on thin ice***.

*Id.* at 28-29 (emphases added).  Following the hearing, the Court issued an order setting a further briefing schedule and expressly instructed the parties:  "***All parties are expected to cooperate in***

---

[3]  In this regard, the Court noted that "[i]f defendants feel so strongly that plaintiff's case is hopeless they should file a proper motion for summary judgment at the appropriate time."  Dkt. # 73 at 8.  Intuit has been trying for months to obtain the evidence needed to bring a summary judgment motion, but Plaintiff and its witnesses have been delaying and blocking Intuit's efforts by noncompliance and misconduct.

Fᴇɴᴡɪᴄᴋ & Wᴇsᴛ LLP
Aᴛᴛᴏʀɴᴇʏs ᴀᴛ Lᴀᴡ
Mᴏᴜɴᴛᴀɪɴ Vɪᴇᴡ

*the orderly progression of discovery*."[4]  Dkt. # 96 at 2 (emphasis added).

## B.   Plaintiff Has Submitted False Testimony To the Court, Concealed Documents, and Tampered with Witnesses

It is impossible to appreciate the scope of third-parties Corecess, Yi and Lee's failure to comply with their discovery obligations without also considering Plaintiff's pattern of malfeasance that has permeated all aspects of this case since day one, including, but not limited to, presentation of false and misleading evidence to the Court and continued interference with the true facts by improperly tampering with witnesses and their discovery compliance.  Further discussion on Plaintiff's conduct is contained in the June 2 Discovery Letter regarding Plaintiff's discovery misconduct filed concurrently herewith.  Dkt. # 152.

### 1.   Plaintiff Submitted False Testimony Regarding Discovery of Intuit's Mint Mark in Its TRO Application

Plaintiff's misconduct in this case started from day one and has continued ever since. Plaintiff planned to file its lawsuit and *ex parte* TRO Application in the hope of extracting a quick and sizable settlement from Intuit.  Cole Decl. at ¶¶ 8-12.  To support its request for *ex parte* relief, Plaintiff had to establish a lack of undue delay, with the most critical fact being when Plaintiff first learned of Intuit's allegedly infringing conduct.  The Complaint and FAC state:

> **KIM personally became aware that MSI** was using a mark similar to the Plaintiff's MARK in or about **August, 2010**. . . .  [KIM] **was alerted by his business partners noting the similarities** between the Plaintiff's MARK and the mark that MSI and INTUIT are using . . . .

Dkt. # 5 at ¶ 35 (emphases added).  Plaintiff repeated the Aug. 2010 date in its TRO Application (Dkt. # 26 at 18:6-8) and in Plaintiff's subsequent pleadings.  *Compare* Dkt. # 44 at 8:25-26; 16:8-10; Dkt. # 80-1 at ¶ 35 *with* Dkt. # 129 at ¶ 51 ("summer 2010").  Kim's various supporting declarations were less specific, claiming that he learned about Intuit's Mint Mark "very recently," or that he became aware of the Mint Mark in the summer of 2010.  Kim Decl. II at ¶ 18 (Dkt. # 28); Kim Decl. III at ¶ 42 (Dkt. # 57).  Without an opposition or holding a hearing, the Court

---

[4]  After briefing and another hearing, the Court denied Plaintiff's claims for conversion of business plan, contributory trademark infringement, contributory copyright infringement, breach of implied contract, resulting trust, and negligence, but allowed Plaintiff's claims for copyright infringement and unjust enrichment. Dkt. # 123.  In closing, the Court stated:  "***Counsel should get cracking and complete discovery on time***."  *Id.* at 17 (emphasis added).

NTC. OF MTN. AND MTN. FOR SANCTIONS                    6                    CASE NO. C10-04422 WHA (JCS)
BY INTUIT INC. AND MINT SOFTWARE INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   summarily denied Plaintiff's TRO Application, noting Intuit's long-time use of its Mint Mark and

2   Plaintiff's delay in seeking injunctive relief from the time of filing suit, but allowed it as a PI

3   Motion.  Dkt. # 32.  In denying the motion, the Court again specifically cited Plaintiff's delay.

4   Dkt. # 74 at 4:19-20 ("over three years since the alleged infringement began and over a month

5   since filing suit.").  Intuit never should have been forced to oppose Plaintiff's TRO Application.

6          Intuit has since obtained irrefutable evidence that *Kim learned about the Mint Mark by at*

7   *least Apr. 27, 2010, when Kim signed up for Mint.com's online financial services*.  Cole Decl.

8   at ¶ 16, Ex. 13.  Even Plaintiff's "story" about being alerted by business partners has been quietly

9   abandoned during discovery.  At his deposition on Mar. 8, 2011, Kim's testimony about when he

10  first learned of Mint.com was shifty and uncertain, yet he maintained his story that he learned of

11  Mint.com in the summer of 2010.  Kim testified that he first learned of Mint.com sometime after

12  he returned from Korea in April 2010, so it could have been in May, June, August, or September

13  of 2010.  Kim Depo. at 163:16-165:16.  In its amended interrogatory responses dated May 10,

14  2011, Plaintiff now states:

15          Sometime *in early summer possibly in April or May 2010*, HS Kim, CEO of
        Innospan, was thinking about the next mobile app project for gleeu and Mint
16      Communications.  Using his Sony laptop, . . . [h]e browsed around about 1 hour and
        *he came across an article that talked about the financial app from mint.com*. . . .
17      *HS Kim visited the website to find out more about the company*. . . .  After
        landing on the mint.com, Kim discovered the very similar logo.  The locations of
18      the discovery could be either Starbucks . . . or KIM's home office.

19  Cole Decl. at ¶ 26, Ex. 16.[5]  Plaintiff offered no explanation for Kim's new-found clarity

20  regarding his discovery of Mint.com.  Only after Kim realized Intuit had evidence regarding

21  when he first signed up for Mint.com did Plaintiff offer a different story, one inconsistent with its

22  earlier representations to the Court about learning "very recently," in the "summer," or in

23  "August 2010."  And in a fashion that exemplifies Plaintiff's misconduct in this case, after

---

[5] Had Plaintiff presented the true facts—its delay of at least six months—it is quite possible that the Court would have
summarily rejected any request for preliminary injunctive relief, just as the Court *sua sponte* denied Plaintiff's TRO
Application.  It is black-letter law that undue delay in a trademark action will preclude preliminary injunctive relief.
*Protech Diamond Tools, Inc. v. Liao*, Case No. C 08-3684 SBA, 2009 U.S. Dist. LEXIS 53382, at *19-20 (N.D. Cal.
Jun. 8, 2009) ("undue delay, standing alone, constitutes grounds for rejecting a motion for preliminary injunction.");
*Gidatex, S.r.L. v. Campaniello Imports of Fla., Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("courts typically
decline to grant preliminary injunctions in the face of unexplained delays of more than two months."); *Playboy
Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) (finding five month delay
"demonstrates the lack of any irreparable harm").

NTC. OF MTN. AND MTN. FOR SANCTIONS          7          CASE NO. C10-04422 WHA (JCS)
BY INTUIT INC. AND MINT SOFTWARE INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

receiving Intuit's draft of the June 2 Discovery Letter and the night before this Motion was due, Plaintiff produced two emails from Mint.com's website unequivocally demonstrating that Kim signed up for Mint's services on April 27, 2010. *Id.* at ¶ 27, Exs. 9, 10.

### 2. Plaintiff Submitted False Testimony in an Attempt to Establish Irreparable Injury in Support of Its TRO Application, Interfered with Corecess's and Yi's Subpoenas, and Tampered with Testimony

Plaintiff drafted and submitted the Yi Decl. (Dkt. # 29) in support of Plaintiff's TRO Application that included the following "facts":

- MintComm had been a business partner to Corecess as they had "prior business deals."
- In Apr. 2010, Yi looked for a business partner to supply parts, and because Corecess had a "pre-existing relationship" with Plaintiff and Plaintiff had been "very reliable" and "provided good services," Yi wanted to contact Plaintiff "first to inquire if it wanted to enter into a business transaction" with Corecess.
- It had been a while since Yi and Kim had been in touch regarding Plaintiff's high speed communications solutions.
- Yi decided to contact Kim by looking up Plaintiff's website, but Yi could not remember it.
- Yi searched the Internet for "mint" and found www.mint.com, which Yi was confused into believing it must have been Kim's new business involving personal finance products because it displayed a trademark that looked the same as Plaintiff's trademark.
- As a result of this confusion, Yi gave the "business opportunity" to another contact.
- The lost business transaction "would have been over US $15 million, based on the potential size of the deal" and such a deal typically would have been renewed for 3-4 years.

Yet Plaintiff omitted that *Corecess had shared office space with and sub-leased space to Kim for years, and that Yi and Kim regularly went to lunch and played golf*. Worse yet, Yi's subsequent deposition testimony not only failed to support the above-noted facts, but showed that they were not true. Yi testified he was not aware of any commercial transactions between Corecess and MintComm or Innospan for any goods or services. Yi Depo. at 144:24-145:8; 148:11-17; 154:18-20. Yi's testimony further showed that he had been in consistent contact with Kim over the years, specifically including the time leading up to the alleged events in Apr. 2010.[6] *Id.* at 186:16-21; 188:18-189:1; 215:16-216:6. Although Yi's declaration states that he had to search the Internet to find out about Plaintiff's "MintComm" business, Yi admitted he has had

---

[6] In one email dated April 5, 2010, Yi wishes Kim to "Have a safe trip!" in connection with Kim's trip to Korea for knee surgery. Cole Decl. at ¶ 60, Ex. 25. Clearly, these men were not such strangers that Yi would have ever searched the Internet to find out about Kim's current business and whether or not to offer him a valuable business opportunity. Plaintiff produced this document almost one month after the Yi Deposition.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Kim's email address, phone number and business card (which lists the www.mintcom.net

2    website).  *Id.* at 190:15-21; 193:1-194:18.  Yi testified that he had no idea who drafted his

3    declaration, but that ***Kim*** had given him the declaration, and Kim later testified that he, not Yi,

4    came up with the $15 million figure for the purported lost business opportunity.  *Id.* at 259:10-

5    262:16; Kim Depo. at 147:6-148:15.  Finally, Yi ***disavowed critical portions of his sworn***

6    ***declaration***, testifying that he had no idea what the alleged deal would have been worth and that

7    he would change his declaration to omit the statement that its value would have been over $15

8    million, which instead had been dictated to him by Kim.  Yi Depo. at 264:6-21; 266:1-6; 284:25-

9    285:4; Kim Depo. at 145:19-146:12; 148:8-15.  Indeed, ***Yi admitted the alleged deal was not***

10   ***really a "serious opportunity" for Kim or Plaintiff***, and, in fact, no deal ever happened with

11   anyone.  Yi Depo. at 214:25-215:5; 278:21-279:7; 286:25-287:9.

12        One of the most egregious examples of Kim's and Yi's conduct surrounds the critical

13   c17.pdf email Kim sent to Yi on Nov. 4, 2010.  *See* Part I *supra*; Cole Decl. ¶¶ 57-59, Ex. 24.

14   With this email, Kim attaches a copy of the declaration Kim drafted and Yi had signed, assuring

15   Yi he had no "***risk or liability***" and instructing him that "***[t]he only important thing is that we***

16   ***need to be very consistent about what is written.***"  *Id.* (emphasis added).  ***This clearly responsive***

17   ***and relevant document—which demonstrates Plaintiff's tampering—has been covered-up at***

18   ***least five ways by Plaintiff, Kim, Corecess, and/or Yi***:  (1) Yi failed to produce it before his

19   deposition; (2) Plaintiff failed to produce it before the Yi deposition in the 58 pages it tried to

20   produce on Yi's behalf; (3) Plaintiff failed to produce it in its own document production, and

21   finally produced it the night before this Motion was filed; (4) despite repeated requests, Yi did not

22   Bates label and formally produce it (though Yi did formally produce other documents he had

23   informally produced on Apr. 12, 2011); and (5) despite another specific request, as well as a

24   production of over 11,000 pages of mostly irrelevant documents on May 24, 2011, Yi again failed

25   to Bates label and formally produce it.[7]

26        Kim's email reminder apparently was not enough, as Kim also delivered a script of key

27

28   _____

[7]   At the further deposition of Yi on May 31, 2011, Yi's counsel (Plaintiff's counsel) for the first time provided a complete copy of the email with the declaration attached, but failed to produce it with Bates numbers.  Yi's counsel finally hand-wrote bates numbers on the document and provided it to Intuit's counsel.  Cole Decl. at ¶ 59.

1   events to Yi for use during his deposition.  In preparing for his deposition, Yi relied on Kim's

2   timeline of alleged factual events, which had been prepared by Kim and given to Yi with portions

3   highlighted to coach Yi's testimony.  Yi Depo. at 38:5-39:14; 211:22-212:8; 212:22-213:5;

4   254:10-13; 302:19-308:7; 317:3-13; 319:11-321:12; Kim Depo. at 149:18-152:10; Yi Video 1-4;

5   Kim Video 1.  Kim's script includes events within only Yi's personal knowledge.  Cole Decl. at ¶

6   51, Ex. 23 (the script); Yi Video 3.  Yi had to be repeatedly told not to use it.  Yi Depo. at 212:2-

7   4; 212:24-25; 254:10-12; Yi Video 2, 5.  Yi had no explanation for why Kim needed to remind Yi

8   of events not involving Kim.  *Id.* at 305:21-308:7; Yi Video 3.

### 3.   Plaintiff Concealed Its Relationship with Rivermark/Lee, Interfered with Lee's Subpoena and Tampered with Testimony

11      Just as Plaintiff omitted the true nature of its relationship with Corecess and Yi, Plaintiff

12  in its TRO Application also omitted the true nature of its relationship with its "Mint IT

13  Consulting services" business's ***only*** customer, Rivermark.[8]  The only evidence of actual sales

14  from 2005-2010 in connection with this consulting "business" that purportedly used the asserted

15  mint logo were invoices to Rivermark from "Mint IT Consulting."  Kim Decl. I ¶ 17, Ex. U (Dkt.

16  # 27).  But Intuit investigated and learned that Rivermark shares the same address as Innospan,

17  Lee was a director of MintComm ***and*** Innospan, and she lives with Kim.  Dkt. # 50 (Wikner Decl.

18  at ¶¶ 15-19, 21-22, Exs. 11-13, 15); Dkt. # 71 (Belichick Decl. at ¶ 9).  A week after these facts

19  were brought to the Court's attention, Plaintiff admitted that he and Lee were married.  Kim Decl.

20  III at ¶ 20 (Dkt. # 57).  Discovery has since revealed that Lee, *inter alia*:  has been friends with

21  Kim since even before MintComm was founded; provided significant investment "loans" to both

22  MintComm and Innospan; had authority to write checks on MintComm's behalf; and often paid

23  Kim for such "consulting services" in cash or as verbal loan forgiveness payments.  *See, e.g.*, Lee

24  Depo. at 26:1-3; 43:22-44:16; 86:20-88:16; 94:18-95:15; 113:18-115:16.

---

25  [8]   Plaintiff complains that Intuit has sought discovery regarding Kim's marriage to Lee, asserting that "all parties have
26  agreed and presumed since the beginning of the lawsuit that Dr. Lee and Mr. Kim are married."  Dkt. # 138 at 3.  ***This is false.***  The personal connection between Kim and Lee—a critical fact that was omitted by Plaintiff in its TRO
27  Application—was uncovered by Intuit's own investigation and presented to the Court.  *Compare* Dkt. # 26 (PI Motion) at 26:8-11 and Dkt. # 27 (Kim Decl. I) at ¶ 17, Ex. U *with* Dkt. # 50 (Wikner Decl.) at ¶¶ 18-22, Exs. 12-15.
28  Similarly, Plaintiff now admits that Yi is a "close business acquaintance" that Kim has known for years, when such fact was also not disclosed by Plaintiff in its TRO Application.  Dkt. # 138 at 3.

NTC. OF MTN. AND MTN. FOR SANCTIONS        10              CASE NO. C10-04422 WHA (JCS)
BY INTUIT INC. AND MINT SOFTWARE INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

On Jan. 3, 2011, Intuit served Lee with a notice of deposition and a subpoena for documents, setting Jan. 17, 2011 as the due date for documents and Jan. 19, 2011, as the deposition date.  Lee failed to produce any documents or provide any responses or objections whatsoever.  Intuit, by letter dated Jan. 19, 2011, noted her lack of any response and her waiver of all objections and requested she produce all responsive documents before her deposition that had been rescheduled to Feb. 4, 2011.  Cole Decl. at ¶ 80.  No documents were produced.  Indeed, when the deposition finally took place on Mar. 11, 2011, at which Kim was present, Lee confirmed she made *no efforts to comply with the subpoena*.  Lee Depo. at 63:14-64:12.  When asked why, Lee responded, "My husband said he will take care of it."  *Id*.  Lee testified that responsive documents were in their home, likely including the invoices from Mint IT Consulting.  *Id*. at 66:10-67:4; 91:12-92:19.  However, after her deposition, Lee produced no further documents, and her counsel contended that the issue is "moot" because she "really has no documents anyways" and that "Plaintiff produced all responsive documents."  Cole Decl. at ¶ 85. Lee also failed to complete her deposition.  After the first morning break, her counsel suddenly informed Intuit's counsel, without any prior notice, that Lee would leave at 1:00 p.m. and not stay for the full day of testimony.  Lee Depo. at 61:18-25.  Also, Kim interfered at Lee's deposition, at one point even demanding the deposition stop, after which he took a break to confer with the witness, and Lee subsequently "clarified" her testimony.  *Id*. at 160:23-162:2.

At Lee's second day of deposition on May 27, 2011, *after* the Court issued its Discovery Order, Plaintiff again tampered with Lee's testimony.  After a break in the deposition, Lee returned to testify and immediately wanted to "clarify" two points from her prior testimony.  Lee Depo. II at 221:1-222:6; Lee Video 1.  When asked if Kim told her to clarify her testimony, Lee responded that "He didn't ask me to do anything. He just says 'Hey, how about this. Did' – so I said it."  Lee Depo. II at 222:18-223:11; Lee Video 2.  When asked what Kim told Lee, Lee was instructed not to answer on the grounds of marital privilege.  *Id.* at 223:16-18.  In addition, Kim actively coached Lee in the deposition room, for instance, clapping his hands and exclaiming, "Good!" after one answer.  *Id.* at 226:5-9.

**4.      Plaintiff Altered Exhibits to Redact Material Information**

Upon reviewing Plaintiff's TRO Application, Intuit noticed information in certain exhibits submitted with Kim's declaration was concealed with black highlighting, which is often used to redact information.  Because Plaintiff had not established any basis for doing so, Intuit demanded unredacted versions of the exhibits.  In response, Plaintiff stated:  (1) "[T]he redacted portions do not have any bearings [*sic*] upon the motion at all . . .  They are technical and financial data . . . ."; and (2)  "[T]he materials do not contain any material relevant to this motion."  ***These representations were false***.  In fact, Plaintiff improperly redacted the names of alleged employees at MintComm, as well as the names of MintComm's advisors and board of directors, which listed Kim's wife, "Dr. Chris Lee."  These are all witnesses in this case.  Plaintiff also redacted evidence of Kim's communications with Yi that would have undermined the credibility of Yi's and Kim's statements under oath about Yi's inability to find MintComm, which led him to be allegedly "confused" by the Mint Mark.  Belichick Decl. ISO Opp. to PI Motion (Dkt. # 71).[9]

**C.      Corecess and Yi Have Failed to Comply with Their Subpoenas and This Court's Discovery Order**

**1.      Corecess and Yi Failed to Comply with Intuit's Subpoenas before Their Scheduled Depositions**

On Jan. 14, 2011, Intuit served Corecess and Yi (collectively, "Yi") with subpoenas for documents and testimony.  On Feb. 8, 2011, Yi's counsel served written objections and responses, and produced documents bearing Bates numbers H YI-CORECESS0001– H YI-CORECESS058.  However, these documents were identical to documents previously produced by Plaintiff, actually having email headers indicating ***Kim*** as the source, not Corecess or Yi.  Intuit met and conferred, sending a letter dated Feb. 10, 2011 that detailed the deficiencies with Yi's discovery responses.  Cole Decl. at ¶ 39, Ex. 20.  This letter noted that Yi's objections based on "trade secrets" were inappropriate in light of the Stipulated Protective Order, which was sufficient to protect any confidential information.  *Id.*  It also specifically noted the absence of any

---

[9]  Plaintiff's pattern of misconduct is further exemplified by other potentially altered documents and the shell game it has played since the outset of this case, making it practically infeasible for Intuit to have the legal issues of this case decided on their merits.  *See* June 2 Discovery Letter at I.A.2. (Dkt. # 152) (listing more examples of potentially altered documents); Cole Decl. ¶¶ 22-36 (describing Plaintiff's after-the-fact creation of documents and inconsistent statements to overcome or otherwise muddy the record whether it has proper standing to assert a copyright claim).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

documents regarding the alleged lost business opportunity and any communications between Yi and Plaintiff during the critical time period around Apr. 2010 or since then.

Yi never provided a detailed response. Instead, Yi's counsel stated: "I have already produced E-Mails for [the] deposition. I don't believe he has any more documents responsive to your requests. But, I will double check and will produce at least 48 hours before the deposition. If we don't produce any documents, then we don't have any more." Cole Decl. at ¶ 40, Ex. 21. Dissatisfied with these representations, Intuit continued to meet and confer by email, addressing each of Yi's objections,[10] and further requested a telephone conference. Although Intuit continued to press these issues, Yi's counsel never provided any available time to meet and confer by telephone and did not respond to Intuit's repeated requests.

At Yi's deposition on Feb. 25, 2011, Intuit learned that despite its pre-deposition efforts to obtain Yi's full compliance with the subpoenas, and despite the representations by Yi's counsel, Yi confirmed that neither he nor Corecess complied with the subpoenas and their counsel made no effort to ensure their compliance.[11] Yi Depo. at 51:4-9; 51:25-53:5; 55:12-56:4; 63:2-12; 63:24-64:5; 68:19-70:12; 73:12-19; 73:20-74:3; 78:15-79:18; 80:13-18; 82:6-8. Yi confirmed that he was not the source of the initially produced 58 pages of documents, but that Plaintiff had produced them without his involvement or knowledge. *Id.* at 45:17-46:20; 66:19-22; 124:20-125:6. Yi also testified he never saw the written responses to the subpoenas or the 58 pages of documents. *Id.* at 44:25-45:16; 67:3-68:1; 86:7-14; 86:21-87:9. Yi also admitted that he did not search his email "sent" folder, and confirmed that responsive documents existed but were not produced. *Id.* at 58:24-59:9; 180:11-23; 184:11-17. Worse yet, Yi testified his email account had "gotten wiped out" several times since 2005[12] and the most recent occurrence was the "last week" before his

---

[10]   For example, after serving written responses and purportedly producing all responsive documents (as re-confirmed by Yi's counsel), Yi argued that all of Intuit's discovery requests were in violation of this Court's Order dated Jan. 20, 2011 (Dkt. # 96). Intuit disagreed, noting that while the Order states that discovery should concentrate on certain matters, it also states "[n]onetheless, in order to avoid delay in preparation of the case for trial, **at least** the foregoing discovery [regarding certain identified topics] should commence." Dkt. # 96 (emphasis added).   Thus, discovery regarding other topics is not expressly prohibited.

[11]   On Feb. 22, 2011, and only after repeated demands by Intuit for compliance with the subpoenas, Yi and Corecess produced only 19 pages of documents consisting of product specifications and a copy of Yi's passport, which were not responsive to any of Intuit's document requests.

[12]   Strangely, however, Yi has somehow produced emails with Kim from 2008, 2009, and 2010.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

deposition.  *Id.* at 59:22-60:8; 62:5-9.  Despite this history of purported data losses, Yi made no effort to search the main Corecess email server for responsive documents.  *Id.* at 57:4-13.

### 2.  Yi's and Lee's Continued Discovery Noncompliance

Following the depositions of Yi and Lee, Intuit continued to push for their discovery compliance.  Nearly a month after the deposition, however, Yi's counsel said he still needed get a copy of the deposition transcript to see the list of places that Yi said he was search for documents.  Cole Decl. at ¶ 54.  As such, Intuit informed counsel for Yi and Lee that it was likely that Intuit would need to seek judicial relief regarding the continued discovery noncompliance and on the morning of Apr. 12, 2011, Intuit sent a copy of the Discovery Letter that it intended to file with the Court.  Shortly thereafter, Yi produced another 17 responsive documents that should have been produced months earlier before his deposition.[13]  The new documents, which were produced suddenly (as evidenced by the lack of Bates numbers on them), appear to have been with Yi's counsel since Mar. 20, 2011.  Around midday on Apr. 12, 2011, the parties conducted a telephonic meet and confer.  Although further compliance efforts were offered, Yi and Lee failed to address the full scope of judicial relief sought by Intuit, including the exclusion of Corecess and Yi as witnesses and monetary sanctions.  Accordingly, Intuit filed its Discovery Letter that evening.

On Apr. 13, 2011, the Court issued its "Order Referring All Discovery Disputes for Assignment to a Magistrate Judge."  Dkt. # 137.  The Court noted that "Defendants' present discovery grievance includes allegations of severe discovery misconduct" and stated that "[i]f the allegations are found to have merit, then the magistrate judge also is requested to make a recommendation as to whether the action should be dismissed because of the alleged misconduct."  *Id.  **This Order clearly put Plaintiff and its witnesses on notice that their discovery noncompliance and misconduct could result in dismissal sanctions**.  However, Plaintiff and its witnesses did not heed the Court's warning.

On Apr. 14, 2011, Plaintiff (but neither Yi nor Lee) filed a response with the Court.  Dkt.

---

[13] These documents included the emails discussed above:  (1) the Nov. 4, 2010 email, c17.pdf (*see* Parts I, II.B.2. *supra*); and (2) the Apr. 4, 2010 email wherein Yi wishes Kim to "Have a Safe Trip!"  Cole Decl. ¶¶ 58,60, Exs. 24, 25.  There is no excuse for Yi's failure to produce these critical documents before his deposition, especially in light of Intuit repeated effort to obtain Yi's full discovery compliance.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# 138. Plaintiff's letter did not address Yi's and Lee's discovery failures, but instead raised irrelevant and baseless complaints about Intuit's discovery requests to Plaintiff. On Apr. 26, 2011, the Court held a telephonic hearing concerning Intuit's Discovery Letter and Plaintiff's request for relief regarding its response to Interrogatory No. 6 (Dkt. # 145) because of alleged confidentiality concerns. Noting the existence of a protective order regarding confidential information, the Court summarily rejected Plaintiff's request and ordered Plaintiff to "[p]roduce the information." Regarding the Discovery Letter, the Court decided to address the compliance issues during the hearing and set a further briefing schedule regarding sanctions, including monetary sanctions, evidence exclusion, and dismissal. Overruling all discovery objections and finding that Yi had failed to conduct "an adequate search for information," the Court ordered Corecess and Yi to do a complete and thorough search, including all company servers, paper documents, and backup storage devices, and to produce all responsive documents. Discovery Order at 1 (Dkt. # 151). The Court also ordered Yi to take all steps possible to obtain information from Corecess Korea and to provide a detailed declaration describing his compliance and what was produced. *Id.* Finally, the Court commanded Yi to appear for a further two-hour deposition after he provided his declaration and all responsive documents. *Id.* The Court similarly ordered Lee to conduct a further search for responsive documents, to provide a declaration describing her compliance and what was produced, and to sit for an additional one-hour deposition. *Id.*

### 3. Yi's Failure to Comply with the Court's Order

#### a. Yi's First Failed Attempt at Compliance

On May 6, 2011, Yi's counsel served the "Declaration of Hon Yi Re Discovery Compliance" ("Yi Discovery Decl.") along with documents purportedly located by Yi after his search for responsive documents. Cole Decl. at ¶ 64, Ex. 26. However, Yi failed to fully comply with the Court's Order. By letter dated May 11, 2011, (the "May 11 Letter") Intuit detailed Yi's many failures, including: (a) the failure to identify and search all required locations; (b) the failure to search for all responsive documents; (c) the failure to properly produce all documents; and (d) the failure to produce any emails with Corecess Korea to confirm Yi's efforts. Cole Decl. at ¶ 65, Ex. 27. In response, Yi's counsel stated: "Yi agreed to conduct additional searches based

NTC. OF MTN. AND MTN. FOR SANCTIONS
BY INTUIT INC. AND MINT SOFTWARE INC.

15

CASE NO. C10-04422 WHA (JCS)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    on your letter, though he highly doubted that he will find anything else." *Id.* at ¶ 66.

2                    **b.      Yi's Second Failed Attempt at Compliance**

3        Despite the sworn statement in Yi's Discovery Decl. that he had "searched all possible

4    locations where Corecess US keeps its documents and E-mails[,]" he did not.  Cole Decl. at ¶ 69,

5    Ex. 28.  Only *after* receiving the May 11, 2011 Letter did Yi conduct a more thorough search,

6    provide a revised declaration, and produce an additional 11,556 pages of documents on May 24,

7    2011.[14]  *Id.* at ¶¶ 69-71.  Even now, Yi's compliance is marginal at best.  Despite the detailed

8    May 11 Letter, Yi has failed to perform basic compliance tasks, such as, *inter alia*:  (1) search for

9    emails to or from Kim's personal email address hydro_kim@yahoo.com (the address Kim

10   received the Mint.com emails); (2) produce Bates stamped copies of all produced documents; (3)

11   identify the email accounts searched and specifics regarding the search process, including

12   whether Yi searched his sent mail, saved mail or deleted mail; (4) indicate whether he searched

13   attachments to emails; (5) explain why Yi asked Corecess Korea to apply different search terms

14   than he applied to his own computer; (6) provide a coherent explanation of Corecess's document

15   retention policy; and (7) apply reasonable search terms or manually look to find documents

16   related to the business opportunity that Yi purportedly gave away.

17       Finally, despite the Court's order that "Mr. Yi shall provide a detailed declaration

18   describing his and Corecess's compliance with the Court's order and what was produced[,]" Yi

19   Discovery Decl. II, which was served with the May 24, 2011 production, makes no affirmative

20   representation that all responsive documents found were actually produced.  Instead, Yi vaguely

21   states that documents were forwarded to Mr. Song (¶¶ 3, 7), or produced "herewith" (¶¶ 4, 11)

22   without providing any supporting details regarding his productions.  As reflected in the chart

23   ────────────────────

24   [14]  Yi's May 24, 2011 production included a few clearly responsive documents, including Corecess accounting documents showing regular meetings between Yi and Kim, as well as rental payments that GleeU made to Corecess. Cole Decl. at ¶¶ 71-72.  These responsive documents were buried among *thousands* of irrelevant pages that resulted

25   from poor search terms such as "business opportunity" and "Broadcom."  Further, of the more than 11,000 pages Yi produced, two PDF files alone combined for over 10,000 pages.  These files consisted of numerous emails copied and

26   pasted together without page breaks or any other reasonable means of indicating any metadata or where one email stopped and another began.  Yi's counsel acknowledged that he did not outsource the document production process

27   and instead did it himself, concluding "***I tried to be as accurate as possible . . . [b]ut, I am just not sure why I ended up doing this.***"  Cole Decl. at ¶ 73, Ex. 29. Conspicuously absent from the May 24, 2011 production were any records from 2006 when Mintcom occupied the Corecess offices, and any records during the critical time period of Apr. 2010

28   to present despite Yi's testimony regarding regular lunches and golf outings with Kim.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

below, Corecess and Yi have been unwilling or unable on their own initiative to produce

documents in compliance with Intuit's subpoenas since day one:

| Corecess/Yi Productions | | | | |
|---|---|---|---|---|
| Pre-Deposition | | Post-Deposition | | |
| Feb. 8, 2011 | Feb. 22, 2011: Produced after Intuit's Feb. 10, 2011 letter | Apr. 12, 2011: Produced after Intuit filed its Discovery Letter. | May 6, 2011: Produced after Discovery Order. | May 24, 2011: Produced after the May 11 Letter regarding non-compliance |
| 58 pages: From Plaintiff without Yi's involvement. | 19 pages : Non-responsive product specs and a copy of Yi's passport. | 28 pages: Included new responsive documents. Production was not bates-labeled. | 74 pages: Only 21 non-duplicate pages produced. Production contained new responsive documents. | 11,556 pages: Mostly non-responsive or duplicates including two PDFs totaling over 10,000 pages, *but still no bates labeled copy of c17.pdf*. |

Yi's further deposition on May 31, 2011 confirmed his lack of good faith compliance

efforts, despite Intuit's May 11 Letter that had identified numerous deficiencies.  For example:

- Yi confirmed that he failed to search for all of Kim's email addresses.
- Yi never asked Corecess Korea to run additional searches for all of the search terms that even he and his counsel had identified, let alone Intuit's more complete set.
- Yi confirmed *no litigation hold* and that he *still deletes email at his sole discretion*.
- Yi recalled emails with Kim regarding his deposition that have not been produced.
- Yi identified a new computer that was not addressed in his compliance declarations.
- Yi confirmed "business expense" meetings with Kim during 2006, 2010, and 2011, but could not explain why such time periods were excluded from Yi's business expense items.[15]

### c.    Intuit's Request for Forensic Copies of Computer Media

In light of Yi's repeated failures and the Intuit's serious concerns about Yi's failure to

preserve, collect, search for, and produce all potentially responsive documents, on May 11, 2011,

Intuit requested that Yi allow Fenwick's IT technicians or an outside vendor to access Corecess's

and Yi's computer media to make forensic copies, which would allow for the potential recovery

of deleted or lost items.  Cole Decl. at ¶ 65, Ex. 27.  Such technician would then apply agreed

search terms to obtain all responsive documents, as well as privilege terms to exclude potentially

privileged documents.  Yi has refused this request.

### D.    Lee Failed to Fully Comply with Intuit's Subpoena or the Court's Order

On May 20, 2011, Lee's counsel served the "Declaration of Christine Lee Re Discovery

Fenwick & West LLP
Attorneys at Law
Mountain View

---

[15]   *See* Yi Depo. II at 337:6-338:14; 354:12-23; 363:16-365:8; 368:6-370:7, 371:18-24, 372:24-373:2, 374:24-375:10; 348:23-349:15; 406:1-7; 406:16-21; 408:22-409:3; 410:15-22; 412:16-413:17, respectively.

Compliance" ("Lee Discovery Decl.") and produced six pages of additional documents (CYLEE_001000-CYLEE_001005). Cole Decl. at ¶ 89, Ex. 34. However, Lee failed to fully comply with the letter or spirit of the Discovery Order. Although the Discovery Order instructed Lee to provide a "detailed declaration describing . . . what was produced" (Discovery Order at 1-2), she failed to address the documents she produced in any way. Furthermore, rather than fully comply with her subpoena, Lee narrowly interpreted the Court's instructions and produced only "documents related to contracts between her dental practice, [Rivermark], and any Kim Company." Cole Decl. at ¶ 89, Ex. 34. And while the Lee Discovery Decl. identifies certain search terms, it fails to describe in detail how Lee searched for responsive documents and what documents were found. Finally, the Lee Discovery Decl. fails to confirm that all responsive documents located by Lee were, in fact, produced.

Lee's second deposition on May 27, 2011 confirmed her failure to make good faith compliance efforts. For example:

- Lee ***never saw*** the Discovery Order;
- Although Lee "searched everything" on her two computers, she admitted that she did not search all computer folders and appears to have excluded those purportedly relating to Kim and his businesses;
- Lee performed a self-collection and search for responsive documents, with no involvement from her counsel, and appears to have produced only documents not previously produced;
- Lee identified a responsive document that was not produced that she thought she gave to Mr. Song but "may have slipped."

Lee Depo. II at 175:7-13, 190:21-192:7, 187:2-13; 221:12-13; and 214:25-215:22, respectively. The fact that a responsive document was omitted when only six pages of documents were produced in total is reflective of Lee's failure to taking discovery in this case seriously.[16] More

---

[16] Intuit served Lee with a subpoena on Jan. 3, 2011 (the "Lee Subpoena"). As such, Lee was required to produce all responsive documents in her possession, custody or control. Lee failed to respond in any way, waiving all objections, and produced no responsive documents. By its Discovery Letter, Intuit moved to compel "Lee to perform a complete search for documents responsive to the subpoena." Dkt. # 136 at 3. The Court found the response by Lee's counsel "completely nonresponsive" and further specifically overruled all objections to Intuit's discovery requests. Cole Decl. at ¶ 88. In this situation, Lee's overly-narrow self-collection and production of merely six pages surely is not good faith compliance with her discovery obligations. Indeed, Lee has not produced ***one single communication*** with her husband relating to any of his businesses or any services he performed for her dental practice, though she was an investor and director in his companies, and her Rivermark practice has been asserted as a customer of MintComm (and then later Innospan) from 2005 to the present.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    troubling, Plaintiff again coached and tampered with Lee's deposition testimony on May 27,

2    2011.[17]  *See* Part II.B.3. *supra*.

3    **III.    ARGUMENT**

4              The Court has the authority to provide discovery relief, including the imposition of

5    sanctions for discovery misconduct under Fed. R. Civ. P. 37 (usually for failure to comply with a

6    court order) and the Court's inherent power to respond to abusive litigation practices.  *Leon v.*

7    *IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

8              **A.    The Court Should Order Further Compliance, Including an Order Allowing**
                      **Forensic Copies of All Corecess/Yi/Lee Computer Media and an Order**
9                     **Granting Access to Corecess/Yi Web-Based Email Accounts**

10             As described above in detail, Yi, Corecess, and Lee have failed to fully comply with their

11   obligations to preserve, collect, search for, and produce all responsive documents.  Their

12   obviously inadequate self-collection efforts, with little or no attorney supervision and direction,[18]

13   fail to meet their discovery obligations.

14             Where, as here, there are concerns that the producing party's conduct suggests that it may

15   be withholding, concealing, or destroying discoverable ESI, the requesting party may move to

16   compel production of ESI through the production of a forensic copy.  *John B. v. Goetz*, 531 F.3d

17   448, 459 (6th Cir. 2008); *Covad Comms. Co. v. Revonet, Inc.*, 258 F.R.D. 5, 9-10 (D.D.C. 2009);

18   *Simon Prop. Group v. mySimon, Inc.*, 194 F.R.D. 639, 640-41 (S.D. Ind. 2000) (allowing forensic

19   duplication of defendant's hard drive following "troubling discrepancies" in defendant's

20   document productions); *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (finding a

21   party may need to perform its own examination of opposing party's computer systems "due to

22

23   [17] This Court expressly prohibits coaching by counsel, thus certainly would prohibit coaching by the party itself.
     Supp. Order (Dkt. # 38) at ¶ 19; *see also* Civil Standing Orders for Magistrate Judge Joseph C. Spero at ¶ 16.  *See*
24   *Ibarra v. Baker*, 338 Fed. Appx. 457 (5th Cir. 2009) (finding that witnesses were improperly coached when provided
     with documents to plant certain facts in their testimony)  In *Ibarra*, one witness even appeared at his deposition with
25   a page of notes that outlined key concepts and facts in support of the implanted testimony.  *Id.* at 463.
     [18] A custodian's self collection of documents without attorney supervision raises serious concerns about propriety of
26   the collection.  *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432, 435 (S.D.N.Y. 2004) ("[C]ounsel must take
     affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched"
27   and must ensure that its client complies with its "duty to locate relevant information and its duty to preserve and timely
     produce that information."); *Housing Rights Center v. Sterling*, No. CV 03-859, 2005 U.S. Dist. LEXIS 44769, at *16
28   (C.D. Cal. Mar. 2, 2005); *Green v. Blitz U.S.A. Inc.*, No. 2:07-CV-372(TJW), 2011 U.S. Dist. LEXIS 20353, at *29-34
     (E.D. Tex. Mar. 1, 2011); *Philip M. Adams and Assocs. LLC v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1194 (D. Utah 2009).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  improper conduct on the part of the responding party").  Courts in the Ninth Circuit have

2  routinely ordered forensic searches to recover potentially lost evidence.[19]  Moreover, forensic

3  imaging of a hard drive is appropriate where that the discovery request is narrowly tailored and

4  seeks ESI relevant to the allegations of the suit.  *See Playboy Enters.*, 60 F. Supp. 2d at 1053-54.

5          Here, the record clearly shows the loss or destruction of potentially discoverable

6  information.  First, Yi "lost" his email several times since 2005, most recently the "last week"

7  before his first deposition.  Second, Yi's has continued a general practice of deleting emails at his

8  sole discretion.  Third, Yi contends Corecess's parent company in Korea retained no copies of

9  Yi's emails.  *See* Cole Decl. at ¶ 64, Ex. 26 at ¶¶ 3, 4, 6.  Fourth, there is no evidence of any

10  litigation hold or other preservation policy implemented by Yi with respect to documents that

11  may be relevant to this lawsuit.   Moreover, such documents are needed in light of Plaintiff's

12  failure to produce relevant documents and where Yi and Kim communicated by email about both

13  business and personal matters, including during April 2010, as well as Yi's involvement in this

14  lawsuit.  June 2 Discovery Letter (Dkt. # 152).  Further, Yi likely would be the sole custodian of

15  documents relating to the alleged "business opportunity" that he purportedly gave away when he

16  was allegedly confused into believing that Kim was now in the personal finance business.

17          Moreover, beyond the admitted loss and/or destruction of evidence, there are sufficient

18  facts to infer willful concealment of documents by Yi and Corecess.  For example, before Yi's

19  Feb. 25, 2011 deposition, Intuit engaged in substantial meet-and-confer efforts to ensure that all

20  documents responsive to the subpoenas were produced.  Despite these efforts, Yi and Corecess

21  produced, without any justification, additional documents on April 12, 2011, ***after*** the deposition

22  and only ***after*** Intuit advised they would seek relief from the Court.  Moreover, notably absent

23  (without any explanation) from the recently produced Corecess accounting information showing

24  Yi's "business expense" interactions with Kim is information from 2006 and after April 2010.

---

[19]  *See Chevron Corp. v. E-tech Intern.*, No. 10 C 1146, 2011 U.S. Dist. LEXIS 53812, at *1-2  (S.D. Cal. May 19, 2011) (allowing order for forensic examination of a hard drive); *Padgett v. City of Monte Sereno*, No. C 04 3946JW, 2007 U.S. Dist. LEXIS 24301, at *4 (N.D. Cal. Mar.  20, 2007) (acknowledging order for inspection of computers, workstations, hard drives, and laptop computers); *see Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999) (ordering mirror imaging of hard drive because defendant did not produce computer used for business and personal matters and continued to delete potentially relevant e-mails after demand to produce).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Yi's failure to produce these documents initially, and Yi's ongoing failure to produce the missing

2  information, indicates willful concealment.

3        In light of the foregoing, a second order compelling full discovery compliance, including

4  by means of forensic copies, is required.  To ensure compliance, Intuit requests the Court enter an

5  order permitting Intuit to make forensic (mirror image) copies of all computer media in

6  Corecess's and Yi's possession, custody or control (excluding Corecess Korea's servers located

7  in Korea) which Intuit may search.  Intuit also requests the Court enter an order permitting Intuit

8  to make forensic (mirror image) copies of all computer media in Lee's possession, specifically,

9  all of Lee's home computers and the computers located at the Rivermark office, which Intuit may

10  search.  Further, Intuit requests an order granting it access to Corecess's Yahoo! email account

11  and all of Yi's email accounts for the purpose of collecting responsive documents, including an

12  order compelling Corecess and Yi to authorize Yahoo! and any other online service providers to

13  produce all recoverable data in their possession, custody, or control relating to Corecess and Yi

14  pursuant to the protocols identified in Intuit's Proposed Order.  Intuit further requests that the

15  Court Order Plaintiff to pay the costs associated with this forensic examination.

16        **B.        The Court Should Impose Substantial Monetary Sanctions**

17        Due to the undeniable discovery noncompliance and the extensive misconduct by Plaintiff

18  and its witnesses, Intuit has been forced to engage in significant meet and confer efforts to obtain

19  requested discovery.  This expensive game of "cat and mouse" described above was avoidable if

20  Plaintiff and its witnesses reasonably met their discovery obligations and played by the rules.

21  Besides any other available sanctions, the Court should require the party violating an order, the

22  attorney advising the party, or both, to pay the moving party's reasonable expenses, including

23  attorney fees, caused by the violation, unless substantially justified.  Fed. R. Civ. P. 37(b)(2);

24  *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381 (9th Cir. 1988).  The Court also has the

25  inherent authority to impose monetary sanctions for discovery noncompliance and abuse.  *See*

26  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991) (holding that federal courts have the inherent

27  power to impose attorney's fees as a sanction for bad-faith conduct even where the conduct at

28  issue could also be sanctioned under another statute or rule).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Early on in this case, the Court warned Plaintiff that its case was "I-F-F-Y" meaning on

2   "thin ice."  But the Court decided not to dismiss the action on the pleadings and instead ordered

3   the parties to "cooperate in the orderly progression of discovery," and bring motions for summary

4   judgment.  The Court instructed:  "Counsel should get cracking and complete discovery on time."

5   Since day one, however, Plaintiff and its witnesses have been engaging in serious misconduct,

6   including presenting false and misleading statements to the Court in support of its TRO

7   Application, and thereafter by delaying and attempting to block discovery, which is necessary for

8   summary judgment.  These actions, combined with the history of Plaintiff's consistent efforts to

9   vexatiously multiply proceedings in this matter (*e.g.*, filing a motion for default on Christmas

10  Eve, filing a proposed second amended complaint when Plaintiff planned to seek leave to amend

11  a third time only weeks later, and serving burdensome discovery on third-parties), have caused

12  Intuit to incur substantial costs that should have been avoided.[20]  Cole Decl. ¶¶ 104, 105.

13    In light of the foregoing and their failures to heed this Court's repeated warnings,

14  instructions and orders, Intuit requests the Court impose monetary sanctions in the amount of at

15  least $419,807.64[21] against Plaintiff, Corecess, Yi, and Lee, finding them jointly and severally

16  liable.  *See Toth*, 862 F.2d 1381 (upholding joint and several liability for monetary sanctions

17  against plaintiff and her attorney as not violating due process).

18    C.    **The Court Should Grant Terminating Sanctions, Including Entering Default
            Judgment, or Alternatively, Should Grant Evidentiary Sanctions, Including**
19          **Excluding Corecess and Yi as Witnesses**

20    The Court has the authority to dismiss this case and enter default judgment in Intuit's

21  favor based on the undeniable record of discovery noncompliance and serious misconduct by

22  Plaintiff and its witnesses.  Beyond monetary sanctions, dismissal is an available sanction when

23  "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial

24  proceedings" because "courts have inherent power to dismiss an action when a party has willfully

---

[20]  28 U.S.C. § 1927 provides: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

[21]  This amount covers Intuit's opposition to the TRO App./PI Motion, its meet and confer efforts regarding Yi's, Corecess's and Lee's discovery failings, the Yi and Lee depositions, the Discovery Letter, and this opening motion for sanctions.  Fenwick's rates have been found to be reasonable by this district. *See* Cole Decl. at ¶ 103.  Intuit is prepared to submit further documentation at the Court's request regarding the amount of monetary sanctions requested.

deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (internal quotation marks and citations omitted).[22]

Before imposing evidence exclusion or dismissal for discovery misconduct, however, the district court should consider the following factors:  "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Id.*  The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions.  Although the district court need not make explicit findings regarding each of these factors, *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988), a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper. *Anheuser-Busch*, 69 F.3d at 348 (citation omitted).

Intuit respectfully submits that applying the 5-factor test to the above-described conduct by Plaintiff and its witnesses establishes the required level of willfulness, fault, and bad faith to impose terminating sanctions.  "When discovery noncompliance is coupled with presenting false information to both an adversary and the Court in order to gain an advantage in the litigation, the Court is justified in imposing the ultimate sanction to preserve the integrity of the federal judicial system."  *Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2011 U.S. Dist. LEXIS 17623, at *22-23 (N.D. Ill. Feb. 23, 2011) (imposing dismissal sanctions, default judgment, $1 million in monetary sanctions, plus all attorneys' fees and costs incurred in litigating the motion to sanctions).  That is the situation here.

Plaintiff and its witnesses presented false and misleading evidence to the Court in connection with Plaintiff's TRO Application.  *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1094 (9th Cir. 2007) (submission of perjured declarations and

---

[22]  Plaintiff's own persistent discovery noncompliance, which has exacerbated the discovery abuse and misconduct described in this Motion, is addressed in summary form in the June 2 Discovery Letter (Dkt. # 152) and should be considered by the Court.  Intuit is prepared to submit supplemental briefing at the Court's request to provide a complete record of Plaintiff's ongoing discovery noncompliance, abuse and misconduct in this case.

NTC. OF MTN. AND MTN. FOR SANCTIONS
BY INTUIT INC. AND MINT SOFTWARE INC.

23

CASE NO. C10-04422 WHA (JCS)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   fabricated evidence amounts to knowing deception of the court and bad faith justify dismissal

2   sanctions). Yi and Lee have also repeatedly failed to meet their discovery obligations, including

3   failing to produce all documents responsive to Intuit's subpoenas and failing to meet the Court's

4   Discovery Order.[23] Plaintiff has been complicit, if not encouraging, of the violations of this

5   Court's Discovery Order. Where a court order has been violated, as here, the first and second

6   factors will favor sanctions. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987).

7       Moreover, destruction of evidence qualifies as willful spoliation if the party has some

8   notice that the documents were potentially relevant to the litigation before they were destroyed.

9   *Leon*, 464 F.3d at 959. Indeed, where a party intentionally destroys documents that were

10  potentially relevant to the litigation, bad faith, prejudice, and unavailability of less sanctions may

11  be found. *Id.* at 959-961 (all data in the hard drives' unallocated space had been intentionally

12  wiped). Yi was on notice to preserve potentially relevant documents by August 2010 at the latest,

13  and there is no evidence that Yi (or Plaintiff) instituted and began following a litigation hold as of

14  that time. The lack of preservation efforts by Yi—Plaintiff's key witness—including Yi's

15  admission that his custom is to delete emails and the suspicious loss of email one week before his

16  deposition amounts to willful spoliation of potentially relevant evidence justifying dismissal

17  sanctions. *Kucala Enters., Ltd. v. Autowax Co.*, No. 02 C 1403, 2003 U.S. Dist. LEXIS 8833, at

18  *19-20 (N.D. Ill. May 23, 2003) (finding normal course of one's business does not include

19  deleting business communications). Indeed, at his further deposition, Yi confirmed that he never

20  instituted a litigation hold, was never instructed to change his practices regarding the preservation

21  of electronic information, and still deletes emails at his own sole discretion. Yi Depo. II at

22  368:12-24; 369:24-371:24.

23      When deciding whether to impose terminating sanctions, the most critical factor is not

24  merely delay or docket management concerns, but truth. *Conn. Gen. Life Ins.*, 482 F.3d at 1097.

25  _____

26  [23]  It is critical to recognize that Yi and Lee are doing Plaintiff's bidding. In an effort to establish Plaintiff's claims by any means necessary, Kim enlisted Yi and Lee to be "helpful" witnesses, using them as his puppets and to submit false and misleading statements to the Court. Moreover, Kim interfered with Intuit's discovery efforts regarding Yi and

27  Lee. Because of Plaintiff's interference and tampering with these witnesses, their noncompliance and misconduct should be imputed to Plaintiff and held against it in imposing dismissal sanctions. *Rosenthal Collins Group*, 2011

28  U.S. Dist. LEXIS 17623 at **25, 39-43 (finding that a party acted in bad faith when it presented false and misleading statements to the court from a non-party consultant whose misconduct was imputed to the party).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  "What is most critical for case-dispositive sanctions, regarding the risk of prejudice and of less

2  drastic sanctions is whether the discovery violations threaten to interfere with the rightful decision

3  of the case." *Valley Eng'rs*, 158 F.3d at 1057 (finding that repeated failure to produce one key

4  document so damaged the integrity of the discovery process as to justify dismissal sanctions).

5  Here, Plaintiff and Yi have engaged in significant discovery noncompliance and misconduct, and

6  have repeatedly failed to produce key documents.  In fact, Plaintiff's failure to produce copies of

7  certain documents provided by Yi shows that Plaintiff either has failed to preserve all potentially

8  relevant evidence or has failed to produce responsive documents in its possession, custody, or

9  control.  The misconduct by Plaintiff and its witnesses amounts to a pattern of deception and

10  discovery abuse.  In this situation, "[i]t is appropriate to reject lesser sanctions where the court

11  anticipates continued deceptive misconduct." *Conn. Gen. Life Ins.*, 482 F.3d at 1097 (quoting

12  *Anheuser-Busch,* 69 F.3d at 352).  "Rule 37 tells all lawyers and their clients that dismissal is

13  possible if they violate discovery orders, and direct warnings or other circumstances may make it

14  clear that it is a real risk of continued violation in the particular case." *Valley Eng'rs*, 158 F.3d at

15  1057.  In this case, there have been numerous instructions, warnings, and orders from the Court

16  that put Plaintiff and its witnesses on notice that discovery noncompliance and litigation

17  misconduct would not be tolerated.  Yet, it has continued and there is no reason to think that it

18  will stop, if only lesser sanctions are imposed.[24]

19  **IV.    CONCLUSION**

20          Intuit respectfully requests that the Court grant this motion for sanctions.

21  Dated:  June 2, 2011                    FENWICK & WEST LLP

22                                          By: */s/ Rodger R. Cole*
                                            _____
                                                Rodger R. Cole

23                                          Attorneys for Defendants and Counter-Claimants
                                            INTUIT INC. AND MINT SOFTWARE INC.

24

25  _____

26  [24]  If the Court is not inclined to grant terminating sanctions at this time, Intuit requests an order precluding Plaintiff
from relying on any evidence from Corecess, Yi, or Lee based on their noncompliance and Plaintiff's tampering.
This requested relief is not in lieu of Intuit's requests for monetary sanctions, another order compelling discovery

27  compliance by Corecess and Yi and orders for forensic copies of computer media and full access to data held by
third-party online service-providers.  Intuit also reserves the right to seek all available sanctions after further

28  investigation, including analysis of any data received from Corecess and Yi, as well as Plaintiff, which has been
separately requested by Intuit.  June 2 Discovery Letter (Dkt. # 152).