UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOSPAN CORP., | Case No. C-10-04422 WHA (JCS) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS [Docket No. 179]** |
| INTUIT INC., ET. AL, | |
| Defendants. | |

On July 1, 2011, a hearing was held on Defendants' Motion for Sanctions (the "Motion"). Brian Song, counsel for Plaintiff, appeared. Rodger Cole, counsel for Defendants Intuit and Mint Software, appeared. Margaret Branick-Abilla, counsel for Defendant Shasta Ventures, appeared. For the reasons stated below, the Motion is Granted in Part and Denied in Part.

**I.   INTRODUCTION**

This motion concerns the conduct of Plaintiff during discovery. Defendants Intuit, Inc. and Mint Software, Inc. (collectively, "Defendants"), contend that (1) Plaintiff, and two witnesses in the case, Mr. Yi and Ms. Lee, have failed to produce documents in the case as required by properly served Requests for Production, Subpoenas, and Orders of this Court; and (2) that Plaintiff submitted false statements to this Court and tampered[1] with witnesses Yi and Lee. As a result, Defendants seek terminating sanctions against Plaintiff.

---

[1] The Court notes that the accusation of tampering by Defendants does not appear to connote "tampering" as that term is defined in the Criminal Code. See 18 U.S.C. § 1510. Rather, the accusation is of coaching the witnesses and delaying or hindering the discovery of evidence.

1    As to the compliance aspects of issue number one, the Court has entered orders, including an
2 order for the forensic copying and examination of the hard drives of Plaintiff, which adequately
3 address the compliance issues raised to date.

4    In this Order, the Court considers whether (1) attorneys' fees and costs should be awarded to
5 Defendants against Plaintiff in connection with the compliance disputes that have resulted in the two
6 previous orders of this Court and in this Motion, and (2) whether sanctions should be imposed for
7 submission of false statements to the Court and for witness tampering.  The Court concludes that
8 Plaintiff should be barred from using the testimony of witnesses Yi and Lee in this matter, and that
9 Plaintiff should pay the attorneys' fees and costs incurred by Defendants in connection with the two
10 previous Orders of this Court and in connection with this Motion.[2]

## II.   BACKGROUND

12    In this trademark infringement action, Plaintiff claims to have been using the mark "mint"
13 since 2005.  Plaintiff's principal is Mr. Kim, whose conduct is at issue in this Motion. He is the CEO
14 of Plaintiff. The First Amended Complaint was filed on September 22, 2010 and the case was
15 removed to this Court on September 30, 2010.  On October 27, 2010, Plaintiff filed an ex parte
16 application for a temporary restraining order and an application for an order to show cause re
17 preliminary injunction.  Docket No. 26.  In that motion, Plaintiff contended, among other things, that
18 (1) he first discovered Defendants' wrongful acts in August 2010 (*Id.*); (2) Mr. Hon Yi was so
19 confused by Defendants' use of the infringing mark that he believed Plaintiff had ceased doing high-
20 speed internet solutions business altogether and gave away a valuable business opportunity to a third
21 party (*Id*. at 21-22); and (3) Plaintiff provided IT consulting services, through its predecessor
22 MINTCOM, to Rivermark Dental (the practice of witness Lee, the wife of the CEO of Plaintiff)
23 from June 2005 to the present (Docket No. 57 at 6-7).  Ultimately, both applications were denied in

---

[2] The Court declines to enter sanctions against the non-party witnesses Lee and Yi.  The Court has adequately addressed the compliance issues with respect to their documents in its previous orders, and does not believe that any further remedy is appropriate.  While these witnesses' initial productions were not adequate, the Court believes that the Orders that have been entered have been sufficient to remedy this failing. Moreover, the sanctions entered against Plaintiff, as described below, are adequate to compensate Defendants for the attorneys' fees and costs incurred in connection with the motions to compel and in connection with this Motion.

2

1  part because Plaintiff delayed seeking injunctive relief until three years after the allegedly infringing
2  conduct, and over a month after the filing of this lawsuit.  Docket No. 74 at 4 (December 3, 2010
3  Order Denying Motion for Preliminary Injunction).
4       The parties subsequently had various discovery disputes.  Defendants filed a letter (Docket
5  No. 136) which ultimately resulted in this Court's order compelling certain discovery from Ms. Lee
6  (Mr. Kim's wife) and Mr. Yi (Docket 151).  Another discovery letter filed shortly thereafter (Docket
7  No. 152) resulted in this Court's order of June 10, 2011, ordering forensic examination by
8  Defendants of Plaintiff's computer media and web based accounts.  In each of these discovery
9  disputes, it was and is the Court's opinion that the production of documents, including electronic
10 discovery, by Plaintiff and by the two third-party witnesses was woefully inadequate and required
11 Court intervention.

## III.  THE APPLICABLE LAW REGARDING SANCTIONS

Rule 37 of the Federal Rules of Civil Procedure provides that, where a motion to compel is granted the court "must" require the attorney or client "whose conduct necessitated the motion" to pay the attorneys' fees and other expenses incurred in making the motion.  Fed.R.Civ.P. 37(a)(5)(A). The only exceptions are where there was no good faith attempt to resolve the motion, where the objections or non-disclosure were substantially justified, or where other circumstances would make an award unjust.  The rule further provides that, where a party fails to obey a discovery order, the court may dismiss the action or enter a number of other listed sanctions, including "prohibiting the disobedient party from . . . introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(ii).  "Evidentiary preclusion is a harsh sanction that generally is not imposed where the failure to provide discovery was either substantially justified or harmless."  *Rooney v. Sierra Pacific Windows*, 2011 WL 2149097 (N.D. Cal., June 1, 2011).

In addition, the Court has the inherent power to manage the cases on its docket.  That power includes the power to impose the sanction of dismissal for misconduct, including discovery misconduct.  *Anheuser-Bush v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995). To justify this extreme sanction, the conduct must be wilful.  *Id*.  Before dismissing a case, the Court must consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need

1  to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy

2  favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.*

3  **IV.   FINDINGS OF FACT**

4      **A.   Plaintiff Wilfully Coached Witness Yi, Failed to Produce a Key Document
Regarding That Coaching Until After Yi's Deposition, and Prepared and
5          Submitted False Statements in Yi's Declaration**

6        Plaintiff's CEO Kim tampered with the testimony of non-party witness Yi in two ways.

7  First, he advised Yi what to say in his deposition. Second, he had Yi swear to a version of events in

8  his declaration (filed in support of Plaintiff's TRO application) that was, in part, false.

9        On November 4, 2010, Kim sent non-party Yi an email. Declaration of Roger R. Cole in

10 Support of Sanctions ("Cole Decl."), Ex. 24. It enclosed a copy of the declaration that Yi had

11 signed in connection with the application for a TRO. It also advised Yi that he did not have to

12 answer any of the questions of Intuit's lawyer if they called, and that Yi could tell Intuit that he

13 wanted to answer questions through Plaintiff's lawyer. The email purported to advise Yi that he did

14 not have "any risk or liability in this legal matter." The email then concluded: "The only important

15 thing is that <u>we need to be very consistent</u> about what is written." *Id.* (emphasis supplied). This

16 email was not produced by Plaintiff until June 2011 – nearly three months after Yi's deposition.

17       Having advised Yi of the need to be "very consistent," the night before Yi's deposition, Kim

18 gave Yi a detailed timeline (Cole Decl., Ex. 23) to "refresh his memory." Yi Declaration in

19 Opposition to Defendants' Sanctions Motion ("Yi Opp. Decl.") at ¶ 29; Yi Depo. at 38. The

20 timeline does no such thing. Rather, it is a transparent attempt to frame Yi's testimony. It contains a

21 detailed description, written by Kim, of *Yi's* thoughts and actions relating to the most important

22 issue on which Yi was to testify: his confusion between Plaintiff's mark and the allegedly infringing

23 mark, which allegedly resulted in Yi giving a valuable business opportunity to a third party instead

24 of Plaintiff. Among other things, the timeline provides:

25       "April 2010: Hon Yi found out that Corecess headquarter is thinking of finding a new chip

26 vendor for VDSL. Hon Yi wanted to discuss with [Kim] for a vendor partnership. However, Hon

27 Yi thought that [Kim] would be in Korea over two months and [Kim] might have been in an

28 operation room by then. Hon Yi quickly tried to take a look at the Mint website but he ended up

other Mint website. So based on the content of the website, Hon Yi assumed [Kim] might have given up VDSL project."

None of this information was within the personal knowledge of Kim – it all concerned what Yi did and thought without Kim's knowledge. Nor was it the repetition, for memory's sake, of a set of facts that had been told to Kim by Yi. First, there is no evidence in the record that Yi ever told Kim the "facts" recited above. Second, this and other portions of the timeline contain facts that were not included in Mr. Yi's TRO declaration – so at the very least they could not have come from that declaration. In any event, even if Yi had mentioned these "facts" to Kim, his effort to tell Yi what to say the day before the deposition was improper. *See Friends of Animals, Inc. v. United States Surgical Corp.*, 131 F.3d 332, 333 (2nd Cir. 1997)( coaching witnesses at depositions grounds for sanctions under Rule 37).

The timeline, coupled with the previous email, can only be characterized as a willfull effort to tell a non-party witness what to say. Yi brought the timeline to the deposition, and repeatedly tried to refer to it while testifying. *See, e.g.*, Yi Depo. at 212, 254.

Plaintiff also prepared and submitted Yi's declaration in support of Plaintiff's TRO application. Yi's declaration contained statements that Yi's later deposition demonstrate are false.

Yi's declaration was not drafted by Yi – it was drafted by Plaintiff's counsel. Yi Depo. at 145:16-18. That declaration stated these facts:

1. Yi's company and plaintiff had previous business deals and Plaintiff was "very reliable and provided good services." Docket No. 29 at ¶¶ 2-3.
2. As a result of confusion with Defendants' web site, he gave the "business opportunity" to another contact. *Id*. at ¶¶ 4-5.
3. "The value of the business transaction would have been over US $15 Million based on the potential size of the deal." *Id*. at ¶ 5.

The facts, as testified to under cross-examination at Yi's deposition, were otherwise:
1. Plaintiff had never provided Yi's company with any, let alone "good,' services and had never engaged in any business transactions with Yi's company other than a non-binding MOU. Yi Depo. at 144; Yi Declaration In Support of Plaintiff Innospan

5

|   |   |
|---|---|
| 1 | Corp.'s Opposition to Intuit Inc. And Mint Software Inc.'s Motion for Sanctions ("Yi Opp. Decl.") at ¶11. |
| 2 | 2. The "business transaction" was not a serious business opportunity and it never came to fruition. Yi Depo. at 215; Yi Opp. Decl. at ¶ 12.[3] |
| 3 | 3. Yi had no idea of the potential value of the opportunity, could not himself determine the value, and the $15 Million number was put into the Yi declaration by Kim. Yi Depo. at 264, 266, 284-85; Kim Depo. at 245-48; Yi Opp. Decl. at ¶ 22. |

Plaintiff's submission of these false and misleading statements was wilful. Plaintiff presumably knew that it had provided no services to Kim's company, and that there had been no business transactions between the two companies other than a non-binding MOU. Kim came up with the $15 Million value on his own, and had no basis on which to believe that Yi believed that to be the value of the deal.

### B. Plaintiff Wilfully Interfered With Document Production by Non-Party Lee and Repeatedly Coached Her at Deposition.

Plaintiff claims to have used the mark at issue in this case, in part, in his sales to Rivermark Dental, the dental practice of Kim's wife, Ms. Lee. Docket No. 27 at ¶ 17 & Ex. U. Her testimony and documents, therefore, are potentially significant. Lee was subpoenaed. Her documents were due two days before her deposition, which was scheduled for January 19, 2011.

Plaintiff interfered with Lee's document production. Lee produced *no* documents on the date they were due. When asked about this, she testified that she didn't even look for documents because Kim said he would "take care of it." Lee Depo. at 63-64. This conduct required a motion to compel resulting in one of the two prior Orders on discovery.

Plaintiff also repeatedly coached Lee at her deposition. In her first deposition – which the Court found inadequate due to the failure to produce documents – Lee stepped out to talk to Kim. Lee Depo. at 166. When she returned, she was asked what she and her husband discussed. In

---

[3] Yi's assertion in his Opposition Declaration that he was confused at his deposition by the term "serious" and that he thought the opportunity was not "serious" because it never resulted in a business deal do not sway the Court. Yi never expressed any confusion with the question at the deposition.

1  response she "clarified" her previous answer about the computers that she and her husband use.  It is
2  clear that she got this answer from Kim.

3  At the April 26 hearing following the first session of Lee's deposition, the Court cautioned
4  the parties against tampering with the witnesses.

5  Nonetheless, at a break in the second session of Lee's deposition, Kim repeated his
6  misconduct.  Lee testified after a break that she needed to clarify her testimony regarding why she
7  could not provide documents for certain transactions between Plaintiff and Rivermark.  Lee Depo. at
8  221-222.  When asked if Kim told her to clarify, Lee stated: "He didn't ask me to do anything.  He
9  just says "Hey, how about this; . . . So I said it."  *Id*. at 223.  Finally, as if this were a sporting event,
10 after his wife testified that she miscarried two days after the first deposition, Kim clapped his hand
11 and said "good."  *Id*. at 226.

### C. Plaintiff Submitted False Statements to the Court about When he First Discovered the Infringing Mark.

14 Plaintiff's delay in seeking a TRO and a preliminary injunction was an important issue that
15 ultimately was one of the reasons that preliminary relief was denied.  Discovery has demonstrated
16 that Plaintiff submitted misleading and false statements to the Court on this subject.

17 Plaintiff claimed in the First Amended Complaint filed in September 2010 that Kim (1) first
18 became aware of the infringing mark "in or about August 2010"; and (2) he was "alerted by his
19 business partners noting the similarities" between the two marks.  FAC at ¶ 35.  In his TRO papers
20 and in his TRO declaration, Kim described the discovery as occurring during the summer of 2010.
21 Docket No. 26 at 12, Docket 57 at ¶ 42.

22 Again, the facts were not as represented.  Plaintiff went on Defendants' mint.com web site
23 and signed up for their services in April 2010 – some 4 months earlier and 6 months before he
24 applied for a TRO.  Cole Decl., Ex. 9.  That web site prominently displayed the accused mark.  To
25 compound this misconduct, Plaintiff did not produce his email correspondence demonstrating this
26 earlier knowledge until June 2011 – 6 months after the preliminary injunction was denied.  He did
27 not produce these documents until after <u>Defendants</u> had brought the correspondence to his attention.

7

It is unclear to the Court whether Kim's failure to produce this email was willful, and whether his stated memory of "summer" or "August" was deliberately false. Admittedly, Plaintiff has been, at a minimum, incredibly sloppy in his production of documents – resulting in multiple motions and orders.

However, one fact is clear. There was no basis for Plaintiff to claim in his First Amended Complaint that he learned of the confusingly similar web site from "business partners." That fact appears to have been made up. Even he has abandoned that theory: His later served amended interrogatory responses claim (correctly) that he found the mark himself on the web. Cole Decl., Ex. 16 at 21.

## V.  REMEDY

### A.  Terminating and Preclusion Sanctions

The Court has carefully measured the conduct in this case under the five-factor test set forth in *Anheuser-Bush v. Natural Beverage Distributors*, 69 F.3d 337 (9th Cir. 1995), as well as the standard governing the preclusion of evidence under Rule 37. The Court concludes that while terminating sanctions are not appropriate, Plaintiff should be barred from introducing certain evidence as a result of his conduct.

While most of the failures by Plaintiff to produce discovery appear to the Court to be the product of negligent conduct, on at least three occasions Plaintiff's conduct was wilful: (1) Plaintiff's coaching of witness Yi, including the preparation of a partially false declaration and providing Yi with a script for his testimony, (2) Plaintiff's coaching of witness Lee at deposition, and (3) Plaintiff's statement in his First Amended Complaint that he learned of the accused mark from his business partners.

These occurrences resulted in prejudice to Defendants. First, Yi is a witness on actual confusion, and is therefore of importance in the case. Unfortunately, now that Plaintiff has told Yi what to say, it is impossible to know what Yi's uncoached testimony would be. This is of particular concern to the Court where Plaintiff has also submitted a declaration from Yi that is, in part, demonstrably false.

8

1    Second, Lee is a witness on the claim that Plaintiff continually used its mark in commerce.
2 Plaintiff claims he used the mark for some period of time in transactions with Lee. This made her
3 testimony on the existence of documentary evidence of transactions between Plaintiff and Lee's
4 company, Rivermark Dental, of importance in the case.

5    However, this prejudice should not be overstated. There is other evidence in the record
6 regarding use of the mark and confusion, and these are only two of the many contested issues in the
7 case. In addition, the Court concludes that there are sanctions less extreme than terminating
8 sanctions that will target the prejudice that resulted from the conduct and provide a sufficient and
9 effective remedy in this case.

10    Because Plaintiff tampered with witness Yi, he will be barred from using Yi, or anyone from
11 any of Yi's companies (Corecess USA and Corecess Korea) as witnesses in this case. In addition,
12 as a result of his coaching of Lee and interference with her document production, Plaintiff will be
13 barred from using Lee and Rivermark Dental as witnesses in this case.

### B.  Monetary Sanctions

15    Plaintiff has previously been found to have failed, along with two non-party witnesses, in his
16 obligation to produce documents. The Court entered two orders compelling production. The
17 remedies put in place by the Court in those orders are a sufficient response to the issues of failure to
18 produce that have thus far been brought to the Court's attention.

19    Under Rule 37, the Court must order that the party compelled to make discovery also pay the
20 attorneys' fees and costs incurred by the compelling party, unless the non-production was justified,
21 or the circumstances make such an award unjust. No such excuses apply here. The Court has
22 previously rejected Plaintiff's arguments on why an order compelling production was unjustified.
23 Moreover, Plaintiff's claim that he acted in good faith – if negligently – does not make the
24 imposition of a fee and cost award unjust.[4] Plaintiff caused the motions to compel. He did so by

---

[4] At oral argument, Plaintiff's counsel claimed that monetary sanctions in an unspecified amount would effectively put Plaintiff out of business. There is no evidence in the record on this subject. Moreover, in light of the fact that it was Plaintiff's conduct that caused multiple motions to compel, it seems to the Court unjust to make Defendants bear the burden of the cost of those actions. Nor is the Court inclined to delay payment by Plaintiff of these attorneys' fees and costs. Defendants could not delay their responses to Plaintiff's failure to produce documents, and incurred fees and costs as a result.

9

failing to live up to his obligations to produce documents, and by doing so in a fashion that caused the Court to conclude that he had not done an adequate search for information. Indeed, it is now clear that Plaintiff was not only responsible for his own failure to produce, but also for the failure of non-party Lee. Moreover, Plaintiff advised non-party Yi that he may answer questions put to him by Defendants through Plaintiff's counsel. Plaintiff's counsel advised Yi on his document production. Yi Opp. Decl. at ¶ 6. The Court concludes based on this evidence that Plaintiff should be held responsible for the attorneys' fees and costs incurred in obtaining compliance from these non-parties.

Accordingly, Plaintiff is ordered to reimburse Defendants for the reasonable attorneys' fees and costs incurred in connection with the two previous joint letters and the resulting Orders of this Court (Docket Nos. 151 and 160). Because Plaintiff's conduct also necessitated this Motion, he shall bear the attorneys' fees and cost incurred in that connection. Defendants shall file detailed declarations and time sheets demonstrating the amounts incurred and their reasonableness within one week of this order. Within two weeks of this Order Plaintiff may file a brief on the reasonableness of those fees and costs.

IT IS SO ORDERED.

Dated: July 7, 2011

JOSEPH C. SPERO
United States Magistrate Judge