IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOSPAN CORP., | No. C 10-04422 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS PURSUANT TO FRCP 41(b) AND MOTION FOR DEFAULT JUDGMENT ON COUNTERCLAIMS** |
| INTUIT, INC., MINT SOFTWARE, INC., SHASTA VENTURES GP, LLC, and DOES 1–20, | |
| Defendants. / | |
| AND RELATED COUNTERCLAIMS / | |

**INTRODUCTION**

In this trademark infringement action, defendants move for involuntary dismissal of plaintiff's claims and default judgment on defendants' counterclaims. Due to plaintiff's willful and egregious conduct in this action, defendants' motion is **GRANTED**, there being no effective lesser alternatives.

**STATEMENT**

Plaintiff Innospan Corp. claimed trademark and copyright infringement, misappropriation, unfair competition, and unjust enrichment against defendants. Defendants Intuit, Inc. and Mint

1  Software, Inc. counterclaimed against plaintiff and its CEO Hong-Seok Kim for declaratory
2  judgments of no trademark rights, senior use of claimed mark, trademark non-infringement,
3  copyright invalidity, and copyright non-infringement. More details about the factual allegations
4  in this action were described in a prior order (*see* Dkt. No. 73).

5       A recap of the procedural history will show the extent of plaintiff's misconduct in this
6  action. In September 2010, this action was removed from Santa Clara Superior Court. Due to a
7  large-scale criminal trial before the undersigned judge, discovery disputes were referred to
8  Magistrate Judge Joseph Spero (Dkt. No. 137).

9       Since then, Magistrate Judge Spero has dealt with plaintiff's relentless discovery
10 violations. Plaintiff's most reprehensible conduct involved manufacturing evidence through
11 coaching witnesses and falsifying declarations. Soon after this action was removed here, plaintiff
12 filed an ex parte application for a temporary restraining order and preliminary injunction. In its
13 motion, plaintiff alleged that its CEO, Hong-Seok Kim, recently discovered defendants' allegedly
14 infringing mark; that third-party witness, Hon Yi, was so confused by defendants' mark that he
15 re-routed business that would otherwise have gone to plaintiff; and that plaintiff used its
16 trademark in its business relationship with Rivermark Dental (the dental practice of Christine Lee,
17 who is Kim's wife) (Dkt. Nos. 26 at 18, 21; 57 at 6–8). In July 2011, Magistrate Judge Spero
18 found that these "facts" were manufactured by the plaintiff (Dkt. No. 181).

19      *First*, plaintiff's CEO Kim coached Yi on what to say in his deposition and had Yi swear
20 to a version of events in his declaration that was false. Before Yi's deposition, Kim sent him a
21 detailed timeline of relevant events to "refresh his memory." This "timeline" contained a detailed
22 description, written by Kim, of *Yi's* thoughts and actions on the topic of trademark confusion and
23 giving away business. For example, the timeline stated: "April 2010 . . . Hon Yi wanted to
24 discuss with [Kim] for a vendor partnership . . . Hon Yi quickly tried to take a look at the Mint
25 website but he ended up other Mint website. So based on the content of the website, Hon Yi
26 assumed [Kim] might have given up [on the old business]." Yi brought the timeline to the
27 deposition, and repeatedly referred to it while testifying. Yi's deposition also revealed that his
28 declaration was entirely written by plaintiff's counsel and patently false on some important

2

points, such as the actual business relationship between Yi's company and plaintiff (Dkt. No. 181 at 4–6).

*Second*, Kim willfully interfered with document production by witness Lee and repeatedly coached her at deposition. Lee produced no documents prior her deposition despite a subpoena to do so. When asked why, Lee responded that Kim, her husband and plaintiff's CEO, said he would "take care of it." He took care of it by not producing any documents. During her deposition, Lee stepped out to talk with Kim and then came back to "clarify" her previous statements. Magistrate Judge Spero found her answer to clearly come from Kim and cautioned the parties against tampering with witnesses. Shockingly, Lee and Kim repeated this ploy at her second deposition despite Magistrate Judge Spero's warning (Dkt. No. 181 at 6–7).

*Third*, Kim submitted false statements in his TRO declaration about when and how he first discovered defendants' allegedly infringing mark. An email produced in discovery revealed that Kim signed up for defendants' web service four months before he said he discovered their website. Morever, his declaration's statement that he first learned of the confusingly similar mark from "business partners" was completely fabricated (Dkt. No. 181 at 7).

Because of plaintiff's egregious conduct, Magistrate Judge Spero imposed a $272,603 sanction and barred plaintiff from using Yi, anyone from Yi's company (Corecess), Lee and Rivermark Dental as witnesses in this action (*id.* at 9; Dkt. No. 189).

Judge Spero's sanction orders became final in August after the undersigned judge denied plaintiff's appeal of the decisions (Dkt. No. 192). Plaintiff was given until November 2 to pay the fine (Dkt. No. 189). By mid-December, plaintiff had not paid *any* of the monetary sanction but instead used money that should have gone toward paying the sanction to pay its expert witness (Cole Decl. ¶ 4; Kim Decl. Exh. 5 at 16). Moreover, plaintiff did not comply with the sanction of testimony preclusion: plaintiff submitted testimony and documents from Yi, Lee, and Corecess in support of its oppositions to this motion and defendants' motions for summary judgment (*see* Kim Decl. ¶¶ 167, 169, 208; Exhs. 69, 71; Kim MSJ Decl. ¶¶ 122, 126; Exh. 80).

This order will not go into great detail about each of plaintiff's *other* violations. There have been many. Plaintiff did not produce over 9,800 emails, approximately 40% of all emails

3

produced, until after the close of fact discovery and in violation of a prior court order (Dkt. No. 212, 229 at 24:5–21). These emails showed, among other things, that plaintiff knew of other mint logos, plaintiff sought to distance itself from the MintComm brand, and plaintiff's primary market was Asia (*see, e.g.*, Cole Decl. ¶ 35; Cole MSJ Decl. ¶¶ 35, 43, Exh. 53). This prevented defendants from using these documents at depositions or following up on the information with further discovery requests (Cole Decl. ¶ 35). Plaintiff also failed to provide an adequate privilege log despite a court order to do so (Dkt. No. 224 at 4–5). Plaintiff prevented production from reaching defendants by failing to pay a third-party forensic discovery company (Cole Decl. ¶¶ 29, 31, 33; Cole Exhs. 7, 8, 10). Plaintiff repeatedly filed papers late (Dkt. Nos. 65, 104, 166, 174, 278). Plaintiff filed a purported stipulation that was not agreed to by defendants (Dkt. Nos. 219, 223).

On November 10, 2011, defendants Intuit and Mint Software moved for involuntary dismissal and default judgment on the grounds that plaintiff repeatedly failed to comply with, and willfully violated, the Court's orders, FRCP, and Local Rules. Oral arguments were held on December 15, 2011. At oral arguments, the Court extended plaintiff's deadline to make payment on the sanction to December 30. On December 29, plaintiff paid $55,187 (approximately 20% of the sanction amount) (Dkt. No. 292). In light of that payment, the deadline to pay the sanction was extended to April 3, 2012. On that day, plaintiff paid an additional $1,134. Thus, in the eight months since the sanctions order, plaintiff has paid $56,321, approximately 21% of the total sanction amount. Plaintiff states that it is unable to pay the remaining $216,282.

**ANALYSIS**

"If the plaintiff fails . . . to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FRCP 41(b). "In determining whether to dismiss a claim for . . . failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants[]; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*,

291 F.3d 639, 642 (9th Cir. 2002). The test for default judgment pursuant to FRCP 37(b)(2) is the same. *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004).

### 1. FACTOR ONE: THE PUBLIC'S INTEREST IN EXPEDITIOUS RESOLUTION OF LITIGATION.

Plaintiff's failure to pay sanctions on time and in full has necessitated a five-month stay in this action. Even before then, plaintiff's stonewalling had required an extension of the discovery cut-off date (Dkt. No. 224). This factor weighs in favor of dismissal and default judgment.

### 2. FACTOR TWO: THE COURT'S NEED TO MANAGE ITS DOCKET.

Plaintiff's misconduct has clogged this docket with discovery disputes (*see, e.g.*, Dkt. Nos. 136, 152, 198, 207, 214, 226). This has necessitated multiple discovery dispute hearings to deal with plaintiff's misconduct (*see, e.g.*, Dkt Nos. 148, 157, 175, 208, 211).

Plaintiff's frivolous filings and persistent attempts to rehash arguments already rejected has further clogged the docket and wasted judicial resources. Plaintiff attempted to re-plead its conversion claim after a *clarifying order requested by the plaintiff* made clear that the claim was dismissed with prejudice (Dkt. Nos. 79–81; 123). Plaintiff filed a motion for default judgment even though the parties had already engaged in motion practice and plaintiff's motion to file a second amended complaint was pending (Dkt. No. 93). Plaintiff repeatedly designated materials as "Attorneys' Eyes Only," forcing defendants to file administrative motions to seal, and then did not file declarations in support (Dkt. Nos. 36, 59, 156, 244). Plaintiff filed a discovery dispute letter alleging spoilation by defendant (Dkt. No. 197); but withdrew it immediately after Magistrate Judge Spero called these allegations frivolous and threatened sanctions for bringing them (Dkt. No. 229 at 4:24–5:3). Plaintiff filed motions to compel for documents before they were due and when it lacked sufficient evidence that such documents even existed (Dkt. No. 176).

Plaintiff filed an untimely Rule 72 motion to overrule Magistrate Judge Spero's sanctions (Dkt. No. 192). Plaintiff requested that the Court "offset" its sanctions with baseless sanctions against defendants (Dkt. No. 212). Plaintiff reargued the merits of the sanction in its opposition to the motion to dismiss (Dkt. No. 279 at 1–6). And plaintiff requested to file a motion to certify an interlocutory appeal and Rule 60(b) motion without any possible ground for satisfying the applicable statutory standards (Dkt. No. 304).

5

Plaintiff's discovery misconduct and frivolous filings have clogged this docket. This factor strongly weighs in favor of dismissal and default judgment.

### 3. FACTOR THREE: THE RISK OF PREJUDICE TO THE DEFENDANTS

Plaintiff argues that defendants were not prejudiced because they have been able to file their motions for summary judgment on time, suggesting that defendants believed their evidence was good enough to be decided as a matter of law despite plaintiff's discovery misconduct (Opp. 16–18). This argument misses the point. Even though defendants filed motions for summary judgment, they were nevertheless prejudiced by plaintiff's discovery misconduct. Defendants could have had stronger support for its motions if not for plaintiff's stonewalling. For example, almost half of all plaintiff's produced emails came in *after* the fact discovery deadline (Dkt. No. 212, 229 at 26:1–21). These emails showed, among other things, that plaintiff knew of other mint logos, plaintiff sought to distance itself from the MintComm brand, and plaintiff's primary market was Asia (*see, e.g.*, Cole Decl. ¶ 35; Cole MSJ Decl. ¶¶ 35, 43, Exh. 53). Because of this delay, defendants were not able to properly support their motions with follow-up discovery based on the untimely produced materials or use the information in their depositions.

Magistrate Judge Spero found that plaintiff's willful manufacturing of evidence "resulted in prejudice to defendants" (Dkt. No. 181 at 4–9). This order agrees. And since then, prejudice to defendants has continued to accumulate. Plaintiff failed to comply with the monetary sanction, leaving defendants with the financial cost of plaintiff's misconduct. Plaintiff tried to sneak *witness testimony that was excluded by the sanction order* into its opposition to summary judgment. This factor strongly weighs in favor of dismissal and default judgment.

### 4. FACTOR FOUR: THE PUBLIC POLICY FAVORING DISPOSITION OF CASES ON THEIR MERITS.

Plaintiff's unstoppable misconduct provides no reason to believe that this action will ever be properly resolved on the merits. Despite sanctions, plaintiff improperly submitted in its opposition filings statements from witnesses already found to false and coached.

Plaintiff's misconduct resulted in incurable prejudice to defendants. Defendants can never know what witnesses Yi and Lee's testimony would have been if they were not coached. Defendants has had shortened time to properly prepare responses because of plaintiff's many late

6

filings. Plaintiff's delay in producing documents has prevented defendants from being able to properly prepare for depositions or seek further discovery based on those documents.

Public policy urges courts to deter the manufacturing of evidence; plaintiff has shown that it will not be deterred by less drastic sanctions. Public policy requires honest testimony from witnesses; plaintiff has obstructed justice by manipulating testimony. This factor strongly weighs in favor of dismissal and default judgment.

### 5. FACTOR FIVE: THE AVAILABILITY OF LESS DRASTIC ALTERNATIVES.

Plaintiff has proven that less drastic alternatives, such as monetary and exclusion of testimony sanctions, would not be effective. This order specifically so finds.

After paying approximately 20 percent of the total sanctions amount, plaintiff has stated that it is unable to pay the rest (Dkt. No. 305). The exclusion of testimony sanction has not been satisfied either: in support of its oppositions to this motion and defendants' motions for summary judgment, plaintiff submitted materials from witnesses and entities excluded by the sanction order. Plaintiff's continuing failure to comply with the sanction order suggests that less drastic alternatives would not be effective.

Litigation is not an anything-goes board game with the end objective of placing a litigation burden on the other side in hopes of extracting an unfair settlement. Even a board game has rules and a requirement to fairly observe the rules. A proceeding in the United States District Court is far more than a board game. It is a solemn endeavor meant to serve the ends of justice. Although we must tolerate some misbehavior in order to give advocacy some breathing room, we should not tolerate terrible abuse that has occurred here. This was not mere advocacy but deliberate tampering of evidence. This factor strongly weighs in favor of dismissal and default judgment.

\* \* \*

The Court has considered whether it is fair for defendants to keep the $56,321 as well as obtain the benefit of a dismissal with prejudice. In the Court's view, given that defendants actually suffered prejudice due to plaintiff's misconduct, it is fair for defendants to keep what has been paid.

7

If there had been substantial payment, that is, if substantially all of the sanction amount had been paid, the Court would have forgiven the balance. But plaintiff has not come even close to doing so. After long last, waiting eight months to allow plaintiff to make good on the sanction amount, it is clear that plaintiff will not do so. The only effective remedy is dismissal under Rule 41(b).

## CONCLUSION

For the reasons stated above, defendants motion for involuntary dismissal and default judgment is **GRANTED**. Plaintiff's claims against all defendants are **DISMISSED WITH PREJUDICE**. Default judgment for declaratory relief against plaintiff is **GRANTED**. The **CLERK SHALL CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: April 4, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE